DORÉ, Judge.
Paul Smith, the .plaintiff herein, purchased on February 3, 1949, from the defendant a rebuilt motor which was installed in plaintiff’s automobile by the defendant under a ninety day warranty under the terms of which the defendant in case of trouble with the motor was to perform any necessary repair free of any cost to plaintiff including parts and labor for the first thirty day period but including only parts for the remaining sixty days, the labor to be paid by plaintiff. Plaintiff further alleges that the said motor was represented to him as having been entirely reconditioned and outfitted with new moving parts; and that under the law was warranted against hidden defects. It may be noted that the plaintiff in his testimony states that in effect he was given to understand that any repair within the ninety day period would be free to him, but the sample ■guarantee introduced in evidence as being similar to the original, which plaintiff lost, sets forth that plaintiff was to pay for the parts after thirty days. Petitioner shows that on April 1, 1949, while petitioner was at. Franklinton, Louisiana a rod burned out in said engine; that petitioner was forced to have his automobile towed from Frank-linton to Baton Rouge and that on April 3, 1949 defendant’s employees attempted to repair said automobile engine by repairing the burned out rod with a new one, for which they charged petitioner the sum of $14; that within one month after the repair of said engine another rod burned out while petitioner was at Walker, Louisiana and that it was necessary that petitioner have his automobile towed from Walker to Baton Rouge and that defendant’s employees again attempted to repair his automobile engine and return the same to him; that on June 13, 1949 another rod in said engine burned out and that petitioner made demand- upon defendant to repair his automobile, which demand was rejected by defendant. Petitioner alleges, on information and belief, that defendant’s agents and employers knew at the time of the installation of said motor on February 3, 1949 that the engine would not properly ■fulfill the pttrposes for which it was sold, and that they knew, or should have known, that it would not function properly; that at the time the motor was sold to petitioner and installed in his automobile, defendant did not disclose to petitioner the hidden defects therein, namely, that the said parts in the motor did not fit properly and would not function properly; that on .April 3, 1949 when defendant attempted to repair the motor he knew or should have known that the replacing of the rod would not in itself alone make the motor function properly with the known wear and tear that an engine is subjected to. Plaintiff’s suit is based on the terms of Civil Code, Articles 2520 et seq., providing for the redhibition action and, in the alternative, on the written guarantee given by defendant when the motor was sold and installed.
The defendant in his answer admits the sale and installation of the motor as alleged and admits the guarantee as set forth in the printed sample referred to above, and, further answering, respondent avers that he sold a reconditioned motor to plaintiff on February 3, 1949 and warranted it only as such; and that sometime in April, 1949, more than thirty days after the date of said purchase, plaintiff complained to respondent’s agents of the faulty operation of said motor, and respondent corrected the same; that plaintiff failed thereafter to make any complaint concerning the operation of said motor within the ninety day warranty period which expired on May 3, 1949.
*297 After hearing the case, the trial judge came to the conclusion, for written reasons assigned, that the case came squarely within the Codal Articles providing for the redhibition action, and granted judgment for the plaintiff in the total sum of $210.23, representing $189.50 as the cost of the motor, plus $6.73 tax, plus $14 paid for repairs. The defendant has appealed.
The plaintiff had sued for $357, but that sum included certain items of equipment not included in the motor, and also 'included wrecker service on the two occasions that his car broke down, which wrecker service was performed for him as favors •and the claim for which was withdrawn during the trial: Therefore the quantum of damage for $210.23 is not disputed and the only question before us is whether or not the trial judge was correct in finding the defendant liable.
The facts in the case appear to he very clear. The only testimony is that of the plaintiff himself and his mother in his behalf, and of the defendant and one of his mechanics, who installed the motor, in defendant’s behalf.
The gist of the plaintiff’s testimony is to the effect that when the motor was installed he drove his automobile in accordance with the instructions given to him by the mechanic who installed it; to-wit, that he drove it at a speed of no more than 35 miles per hour-for the first 500 miles and that thereafter at a speed of about 40 or 45 miles per hour. He positively denies ever having driven the automobile at a fast rate of speed or without proper water or oil. Nevertheless he states in his testimony that about a month after purchase of the rebuilt motor and while he was in Frank-linton his car broke down and that upon having it towed to defendant’s garage he was told that a rod burned and they put another rod in place thereof. He states that on this occasion no charge was made, which testimony is apparently in conflict with paragraph five (5) of the petition, which states that a charge of $14.00 was made for the rod burned on the Franklin-ton trip. He states that after the replace- ( ment of the rod his car ran all right until the next rod burned out probably two weeks later while he was at Walker, Louisiana ; that this second breakdown was some two months or more after February 3, 1949 and that on this occasion he had his car towed again to the garage and again defendant’s mechanic replaced the second burned rod. It may be noted here that the testimony of the plaintiff’s mother was introduced with reference to the breakdown of the car at Walker, Louisiana. She states that she was acompanying her son on a trip through Walker going to Frank-linton. She testified .further as follows:
“Q. Where were you at that time? A. We were at Walker, Louisiana.
“Q. At that time what happened to the automobile? A. It was just knocking in his motor and he got out and listened and said T guess it is another rod burned out.’
“Q. Had you ever been riding with him earlier when he had trouble with the engine? A. Well, I had been riding with him and it seemed to be knocking a good deal and he said it was o. k. he guessed, ■after he had the first rod fixed it didn’t seem to work right any more.
“Q. You were with him when the whole motor went down? A. Yes, sir.
“Q. What did he do ? A. He ¡stopped it right there.
“Q. How did you all get to town? A. Our friend came and pulled the car in and brought us into town.”
She was not cross-examined.
Plaintiff testified further that after the second rod replacement the car ran all right for about a week or two until shortly after the ninety day period was over, and that while he was going 40 or 45 miles an hour “it just quit running, started rattling and knocking and would not go anymore.” This breakdown was approximately one mile from the Florida Street Circle in Baton Rouge and plaintiff again had his car towed by a 'friend, this time to his house, where defendant’s employees picked it up for. repair. On this occasion, which was after the ninety day period, they took the motor down and informed 'plaintiff that he had a broken block and that the motor could not- be repaired. They offered him another motor for the sum of $258.
*298 If the testimony of plaintiff can he believed, there is no question that he was sold a defective motor and that that fact was discovered by the defendant or his employees within the ninety day period. The only testimony introduced to contradict the plaintiff is that of the defendant and his mechanic. They both testify very much to the same effect. They both state that there is nothing unusual in the case of a Hudson motor that rods will burn out as frequently as every thirty days even should the motor be a good one, apparently because of the nature of a Hudson motor rod. This is hard to believe, and certainly there is no showing that plaintiff was informed of anything like that. It seems reasonable to say that if plaintiff had been told that he could expect the rods in the motor to burn out as frequently as they did here he would not have purchased the motor even with the guarantee that they would be taken care of for a period of ninety days. The rest of the testimony of defendant and his mechanic is to the effect that in their opinion the car was run at too fast a speed and probably was without sufficient oil pressure or without sufficient water, causing excessive heat which was the real cause of the motor being burned out. Of course, this testimony is based entirely on the proposition that the witnesses are experts and could make those conclusions from the condition in which they found the motor, and is not corroborated by any other testimony and is flatly contradicted by the testimony of plaintiff.
The trial judge states, “A reading of the testimony will, in my opinion, convince the reader that plaintiff exercised quite a bit of restraint in his dealings with defendant and the court was impressed with his demeanor on the witness stand.” We, too, are favorably impressed by the testimony of plaintiff, even without the advantage of seeing him on the witness stand.
In view of the above considerations, we are convinced that the motor sold to the plaintiff 'had hidden defects which were known by the defendant and further that the defendant had full knowledge, at least within the ninety day period, that the motor could not perform the service intended.
We agree with the trial’ judge that the case comes squarely within the Articles of the Civil Code, 2520 et seq., providing for the redhibition action. The motor sold to plaintiff was unfit for the purpose intended. “See Savoie v. Snell, 213 La. 823, 35 So.2d 745 and the cases therein cited; Dupuy v. Blotner Bros., La.App., 6 So.2d 560; Harris v. Halligan, La.App., 23 So.2d 332; Evans v. Crumley, La.App., 1 So.2d 137.”
We are of the further opinion that the case is covered by the guarantee of ninety days, even though the final complete breakdown of the motor was discovered subsequent thereto. The defendants certainly had full knowledge that the motor was completely defective before the ninety day period had expired.
For these reasons, the judgment appealed from is affirmed.