Plaintiff bought a used Plymouth automobile from the defendant on December 22, 1943, and executed a chattel mortgage on the automobile for $837.75, payable in monthly installments of $55.85. This amount included carrying charges. The sale price of the automobile was $995, the defendant allowing plaintiff a credit of $335 on a tradein, leaving $660 balance due on the price of the car to which was added the carrying charges to make up the amount of the mortgage. The mortgage note was transferred to a finance company on the day the sale was completed.
Plaintiff filed this suit in April, 1944, about three and a half months after the sale, asking that the sale be rescinded and set aside and that the defendant be required to refund the sum of $335 represented by the cash payment on the car; that the defendant be required to deliver back to him the mortgage note, and that he be required to re-imburse plaintiff for sundry items paid or lost by him because of defects in the car, together with a refund of three installments which he had paid on the note, with interest, reserving to plaintiff the right to sue for the refund of any future installments as they mature.
The ground for setting aside the sale is that the automobile was mechanically defective at the time of the sale which vices and defects rendered it useless for the purpose for which it was bought. The defects are listed as a flat crankshaft, cracked cylinder head, universal joint out of line, leaky radiator, timing gear worn out, and left rear spring broken. Defendant admitted in his answer that there was a broken cylinder head gasket and a broken spring in the car at the time of the sale, but he alleges that plaintiff was advised of these defects at the time of the sale and accepted the automobile as it was. He denied that the car had a flat crankshaft at the time of the sale, and alleged that the car was in good mechanical condition when sold, and that the car was sold without warranty.
The trial judge dismissed plaintiff's suit and he has appealed.
With reference to the warranty by defendant, the act of mortgage which both parties signed declares that the automobile was sold "with full warranty," which of course would include a warranty that the car was free from such mechanical defects as would render it unfit for the purposes for which it was bought. It does not appear just how many miles the car had been run, but it was a 1941 model and might well have been expected to be in fairly good mechanical condition. Defendant testified that at the time of the sale the kind of a car sold plaintiff was selling for $1,300 to $1,400 if the car was in first class condition and had low mileage on it. As the car sold plaintiff was sold for only three or four hundred dollars less than this top price it must be assumed that the plaintiff had a right to expect a reasonably good car for the price which he paid.
Plaintiff testified that the day he took possession of the car it was driven out to a station owned by defendant some half mile from the sales office in order to change the tires; that when he got to the station he called defendant, who had gone to the finance office to negotiate the notes, and told him to call off the deal as he had decided *Page 334 
that he did not want the automobile. On being asked if he made any mechanical discovery about the car at that time he replied: "At that time we discovered the spring broke, and on raising the hood we listened to the motor pretty close. Several fellows around gave their opinion on the automobile before I called Mr. Halligan." He said in another place that he told Halligan that the motor did not sound right, and mentioned other things he did not like about the car. The defendant admits that he had this telephone conversation with plaintiff at this time but he denies that plaintiff said anything about being dissatisfied with the car but that he wanted to get out of the deal because he did not think he would be able to meet the notes.
[1] While in some respects plaintiff did not make a very impressive witness, yet it seems to us that much of his testimony is corroborated by other testimony and circumstances connected with the transaction. For instance, he said that he took the car to a mechanic named Warren the same day he bought it, and this mechanic and another one who saw the car on the same day told him that the motor sounded like it had seen its best days. Warren testified that he did not take any of the motor apart, but he raced it and listened to it run, and told plaintiff he had a bad motor. It is generally known that a mechanic can listen to a motor run and tell whether or not there is something wrong with it without taking it apart, althought he might not be able to ascertain the exact nature of the trouble.
So that when plaintiff states that he first suspected something wrong with the car less than an hour after he purchased it and called the defendant from the station after getting an expression from some of those around the station about the motor, his statement seems consistent with his acts in getting the opinion of two mechanics on the car immediately thereafter, and his reason for calling defendant when he did was prompted because of his doubt as to the mechanical condition of the car rather than from a doubt which had arisen in his mind as to his ability to meet the notes. He had just signed the papers, and it hardly seems reasonable that this doubt had arisen in his mind in such a brief time unless it was caused from some apprehension on his part as to the condition of the car.
Plaintiff states that a few days after he bought the car he attempted to make a trip in it to Ponchatoula, and when he was about five miles out of Baton Rouge the motor began to knock terribly bad; that he checked the oil and water which were all right; that when he proceeded slowly the motor continued to knock, and when he speeded up to a certain point the noise would cease, but when his speed reached a certain point it began to knock again. He said that there was a slow leak in the radiator and the water would leak out in about twenty four hours when the car was running, and that oil leaked out on the motor. Plaintiff testified to several efforts to run the car after he bought it and the trouble he had with the motor. In many instances the motor would stop and he would have to have it sent to a garage.
About three months after he bought the car plaintiff had his brother-in-law who is a mechanic in Jeanerette to work on the car. This mechanic found several defects in the car at that time, a flat crankshaft, a cracked cylinder head, a broken rear left spring, together with several other defects not so serious in nature. The mechanic stated that the car was in poor condition at that time, and that he would not buy it for his use. He made repairs on the car for which he charged $70, and put the car in such condition that it would run, but he admits that there was the likelihood of motor trouble if the car was run at a high speed.
Defendant undertook on cross examination of plaintiff to show that his brother-in-law was shown the car on New Year's Day, a few days after it was purchased, and that at that time plaintiff made no complaint about the car. From the testimony of both the plaintiff and his brother-in-law it is shown that plaintiff did suspect at that time that there was something wrong with the motor. His brother-in-law testified that plaintiff told him on January first when he showed him the car he had just bought that he wanted to change the rings in the car because it was using too much oil and had a knock in it; that plaintiff asked him to listen to the motor as he thought it had a knock in it. The mechanic says that he just heard the motor run and it did have a little knock in it at that time.
After some further effort to run the car plaintiff stored the car and brought this suit to rescind the sale. He claims that he made several efforts to get defendant to adjust the matter after he found out about the defects but could get no satisfaction. *Page 335 
The defendant denied that the car had a flat crankshaft in it when sold to plaintiff, and claims that it was in good running condition, other than a few minor repairs which were made. He denies that plaintiff made any complaint about the car until he had his brother-in-law work on it in March, 1944, but he admits that plaintiff brought the car back for adjustments and repairs after the sale was made. One or two of defendant's employees testified that there was no knock in the motor when the car was sold, but a colored mechanic working for the defendant admitted that plaintiff brought the car back for some repairs within three or four weeks after he bought it.
Mr. Barbari, an expert motor mechanic, examined the car the latter part of May, 1944, a little more than five months after the sale, and found the crankshaft undersize which he considered a major defect. The shaft averaged from six-thousandths to thirteen-thousandths of an inch in wear, which he thought developed over a considerable period of time; that the more a car with a worn crankshaft is used, the greater will be the wear on the shaft. He also found a cracked cylinder head on the motor but could not tell how long it had been cracked.
[2] From the evidence in the case, it seems to us that the plaintiff has shown that there were serious defects in this car when he bought it. He has shown that there was a knock in the motor observed by two mechanics shortly after he bought the car. Of course, plaintiff did not know what the trouble was as he does not claim to have any mechanical experience. There is evidence to show that several persons listened to the motor just after the car was purchased, and these people expressed an opinion on the very day of the sale that something was wrong with the motor. If we are to believe plaintiff (and there is no reason not to believe him) that only a few days after he bought the car he made a trip to Ponchatoula and had the trouble with the car which he mentioned in his testimony, the conclusion is irresistible, when taken in connection with the other evidence, that there were serious defects in the car when he bought it.
The right of plaintiff to rescind the sale is based on Article 2520 of the Civil Code which gives a purchaser the right to avoid the sale where there are such vices and defects in the thing sold as would render it absolutely useless on its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the defects. Of course, this car was purchased for use and its use was certainly made inconvenient and imperfect if plaintiff had the trouble with the car which he claims. A car not in running condition certainly would not be fit for the purpose intended.
We have read and attempted to compare the present case with the facts in the two cases of Crawford v. Abbott Automobile Company Ltd. 157 La. 59, 101 So. 871 and Evans v. Crumley, La. App., 1 So.2d 137, where the sale of second hand cars was set aside for redhibitory defects, and it seems to us that the facts in the present case are as favorable for avoiding the sale for defects as they were in the two cited cases.
[3] We do not think plaintiff is entitled to recover the items of damage which he claims for loss of time on account of the failure of the car to operate, or the expenses incurred in attempting to repair it. Justice will be done by placing the parties in the same position they were in before the sale as nearly as is possible under the circumstances.
For the reasons assigned it is ordered that the judgment appealed from be reversed and set aside, and it is now ordered that the sale of the used Plymouth automobile from defendant to plaintiff on December 22, 1943, be rescinded and set aside and the said automobile held subject to the order and disposition of the defendant; that plaintiff have and recover judgment against the defendant in the sum of $335, the amount of the cash payment on said automobile, plus the sum of $167.55 to cover the three installments, paid on the mortgage note up to the time of filing the suit, with legal interest on both of said amounts from judicial demand until paid; that the defendant be ordered to return the mortgage note executed by plaintiff as part of the purchase price of said automobile, and in default thereof that plaintiff be reserved the right to sue the defendant for any and all amounts which he may be forced to pay on said note, as well as any amounts paid by him after the filing of this suit, that defendant pay all cost of the suit in both courts. *Page 336