McCALEB, Justice.
 

 .This is a redhibitory action in which plaintiff seeks to rescind his purchase from defendant, on September 19, 1949, of a new 1949 model (98) Oldsmobile car for the price of $3,522.20. He alleges in substance that, notwithstanding that the car was expressly warranted against vices and defects, it began to exhibit mechanical failures within one week after his purchase; that the defects were such as to continuously cause the car to operate improperly; that, specifically, the motor misfired, became overheated, emitted a loud, disagreeable, grinding noise; that it would occasionally fail while being driven upon the highway and that, among other defects, the hydraulic valve lifters would stick causing irregular combustion . and resulting in weak and inadequate horsepower. He further avers that he complained to defendant as soon as the defects manifested themselves; that he repeatedly expressed his dissatisfaction to defendant over many months, during which defendant and his mechanics had unsuccessfully attempted to remedy the vices and defects in the motor and that, on June 13, 1950, he -returned the car to defendant as being unfit for the purpose intended.
 

 The defendant denies plaintiff’s charges. He professes that the automobile was delivered in good mechanical order and that, other than minor adjustments to the motor which are incident to the initial use of a new automobile, the car at no time exhibited such mechanical faults as to justify the maintenance of this action.
 

 After a trial, there was judgment in favor of defendant dismissing plaintiff’s suit, the judge being of the opini'on that defendant’s position that the car was free from serious mechanical defects was well founded. Plaintiff has appealed. '
 

 Article 2520 of the LSA-Civil Code defines redhibition to be the avoidance of a sale “on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice”. Hence, the main issue in the case is one of fact, i. e., whether the automobile exhibited such imperfections which rendered its use so inconvenient that, had plaintiff known of them, he would not have bought it.
 

 The evidence reveals, without serious contradiction, that the motor of the car began to operate imperfectly shortly after plaintiff’s purchase; it misfired, was unnecessarily noisy-and generally-functioned unsatisfactorily. Plaintiff," who lives at Big Bend, Louisiana, approximately 27 miles from Marksville where defendant operates an Oldsmobile agency under the name of “Midland Motors”, brought the
 
 *351
 
 car immediately to defendant’s place of business and defendant, assuring him that the engine needed only minor adjustments, attempted to remedy the defects. However, the efforts of his mechanics were unsuccessful as the motor continued to function improperly. Plaintiff testified, and he is corroborated by several witnesses, that the motor continuously misfired, became overheated and would occasionally stop on the road; that he' would bring the car back to defendant’s shop; that it would be worked on by defendant’s mechanics but that the defects were not corrected; that defendant repeatedly assured him that the motor would be made to operate properly, advising him to use a special sort of oil and gasoline and to drive the car at a fast speed; that he carried out these instructions but that it did not alleviate the unsatisfactory condition; that, at approximately the time when the sixty day guarantee against mechanical defects was to expire, he made a special trip to defendant’s place of business and that defendant told him not to worry about the guarantee “ * . * * that the car was yet his as long as it would make that noise”.
 
 [1]
 
 It was further shown by plaintiff that he drove the car to the Oldsmobile agency in the city of Alexandria where it was examined, but not repaired, by its service manager. This witness, who testified for defendant, admitted that there was some “valve tapping” and that the carburetor on that model Oldsmobile was imperfect
 
 [2]
 
 but stated that the motor would not overheat and that these minor defects would not injure it. Plaintiff further testified that, during the nine month period that he kept the automobile, he brought it to defendant’s place of business approximately eighty times for repairs. In fact, he says he brought it there so often that he was ashamed of his constant complaints. Finally, on June 13, 1950, after nine months of disillusionment and disgust, he returned the car to defendant and instituted this suit.
 

 As above stated, the defendant maintains in his answer that the automobile was not below standard. He testified accordingly and, although he admits there was some “valve tapping”, he avouches that the defects were inconsequential and were remedied in his shop, only to recur. However, he implies that reappearance of the trouble was not due to any defect in the motor but might have been attributable to plaintiff’s use of the car on a dusty, gravel road or that he was driving it too slow. Never
 
 *353
 
 theless, .the record makes it evident that the defendant recognized that there was a serious defect in the functioning of the motor that he was unable to correct for, on June 2, 1950, he wrote Mr. Wayne Hubbard, District Service Manager, Oldsmobile Division in Memphis, Tennessee, advising him that plaintiff’s car had been a source of constant trouble due to the sticking of the hydraulic valve lifters; that he and his mechanics were puzzled as to the cause of the disorder; that the inside of the motor had been flushed on two occasions and the valve lifters removed, cleansed thoroughly, reassembled and installed and he suggested that Mr. Hubbard make an inspection. In response to this letter, Mr. Hubbard came to Marksville, 'following the date on which plaintiff returned the car to defendant. He inspected the car and personally installed an entire new set of sixteen hydraulic valves. This apparently remedied the defective performance of the motor as several mechanics, who examined the car after Mr. Hubbard had installed the new valve lifters, testified that it was operating satisfactorily. However, the evidence of these mechanics, upon which the trial judge relied, did not and could not overcome the strong showing made by plaintiff that the motor never functioned properly during the nine months the car was in his possession.
 
 [3]
 

 Verily, a careful examination of the record is most convincing of the correctness of plaintiff’s position that there was a defect in the motor which rendered the operation of the car so imperfect as to warrant a rescission of the sale. It is manifest that, aside from any express warranty, a purchaser of an automobile is entitled to a vehicle that will meet his needs and that a car which will not run or runs intermittently or imperfectly and which requires the frequent attention of a mechanic to keep it going is an abomination to the owner.
 
 [4]
 

 
 *355
 
 The evidence establishes, that the imperfect operation of the motor was chiefly attributable to the sticking of the hydraulic valve plugs or lifters which were defective and had to be replaced. And, if defendant or his mechanics had diagnosed the seat of the trouble, they could have undoubtedly corrected it by replacement of the plugs or lifters and proper adjustment. However, no one associated with defendant seemed to have possessed sufficient skill to remedy the defects, notwithstanding that they had the car more or less under constant observation for nine months. During all that time, plaintiff’s complaints were frequent and he exercised untiring patience and restraint in the face of defendant’s unfruitful efforts to correct the fault. Hence, the fact that Mr. Hubbard was subsequently able to immediately recognize the deficiencies and remedy them cannot avail defendant in this suit for, at that time, plaintiff had returned the car as unsatisfactory and unfit for the purpose for which it was purchased.
 

 Counsel for defendant contends that a decree of rescission is not proper because plaintiff did not return the car within a reasonable time after he had knowledge of its imperfections and that his failure in this respect is to be regarded as an unequivocal act of acceptance of the defective vehicle.
 

 In view of plaintiff’s constant and reiterated complaints relative to the unsatisfactory performance of the car, it is patent that this proposition is not substantial. Obviously, the only reason why plaintiff kept the car during the nine month period and operated it some 9600 miles (he says that much of this mileage was accumulated in driving to and from his home to defendant’s place of business in Marks-ville, 54 miles each round trip) was because defendant had repeatedly assured him that the defects would be corrected and had represented that he was responsible even after the express warranty period had expired. The cases of Fairbanks, Morse & Co. v. Boney, 156 La. 729, 101 So. 122; Murphy v. Ethridge-Atkins Corporation, La.App., 185 So. 487 and other adjudications relied upon by defense counsel do not support this state of facts.
 
 [5]
 

 
 *357
 
 The judgment appealed from is reversed arid it is now ordered that there be judgment herein in favor of plaintiff and against defendant for the sum of $3,522.20, with legal interest thereon from judicial demand until paid and for all costs.
 

 [1]
 

 . Defendant admits making this statement but contends that he merely meant to convey his willingness to repair the car, without cost, to, plaintiff, as long as it operated poorly.
 

 [2]
 

 . He said “Now there Is another trouble we have had. We have a carburetor that will load up after you have driven the car and it gets bot. The carburetor will load up and it will take you probably four seconds to start up. Four seconds is a good bit of ground, but that is a normal condition we have. There hasn’t been any way to eliminate it.”
 

 [3]
 

 . In addition to lay witnesses, plaintiff offered the testimony of Murphy Grimes, service station operator; Percy Pike, a mechanic and shop foreman at Gremillion Bros.; Vernon Manuel, a mechanic; Boland Gremillion, formerly a mechanic; Lysso A. Coco, formerly in the tractor business, and Kirby M. Babalais, a mechanic formerly employed by defendant who had worked on the car in question. All of these witnesses stated that the Oldsmobile was not in good running order at the time they witnessed it in operation.
 

 [4]
 

 .See Crawford v. Abbott Automobile Co., 1924, 157 La. 59, 101 So. 871; Ehrlich v. Roby Motors Co., 1928, 166 La. 557, 117 So. 590; Jackson v. Breard Motor Co., 1929, 167 La. 857, 120 So. 478 (the court rejected the testimony of expert auto mechanics, because the vendee had not contracted “to hire an expert automobile mechanic to drive him”); Richards v. Abbott Cycle Co., 1906, 3 Orl.App. 437; Harris v. Halligan, La.App.1945, 23 So. 2d 332; Id., La.App.1946, 25 So.2d 111; Kuhlmann v. Purpera, La.App.1947, 33 So.2d 84; Savoie v. Snell, La.App., 29 So. 2d 315, affirmed 1948, 213 La. 823, 35 So. 2d 745.
 

 [5]
 

 . Nor do we think that the facts of the case bring it under the rule many times recognized by this court, see Ehrlich v. Roby Motors Co., 166 La. 557, 117 So. 590; Tucker v. Central Motors, 220 La. 510; 57 So.2d 40 and Poor v. Hemenway, 221 La. 770, 60 So.2d 310, that a suit to rescind a sale for a redhibitory defect or other cause must fail when the purchaser has sold or otherwise used the property to such an extent that it eannot be returned to the seller in substantially the same condition as when sold. Here, even if it could be said that the use (9,600 miles) was such as to render it incapable of return in substantially the same condition as when purchased, the doctrine of the cited cases would still be inapplicable for the reason that the use of the car was attributable to defendant’s fault in lulling plaintiff into the belief that the defects would ultimately be corrected.