SAVOY, Judge.
. Plaintiff-appellant, Stubblefield Chevrolet Company, Inc., instituted suit for the balance due on the purchase price of a 1954 Chevrolet, 2-ton truck. The basis of the original suit was a promissory note dated December 19, 1957, in the sum of $1,224, with eight per cent per annum interest, from maturity, plus ten per cent attorney’s fees; the note was subject to a credit of $68 paid February 1, 1958. Defendant-ap-pellee, Wesley Martinez, admitted the purchase of the used truck and the execution of the promissory note, but reconvened seeking to rescind the sale on the basis of redhibition, alleging that the motor in the truck was defective, the generator was not usable, the crank shaft was out of line, the starter was in poor condition, the radiator was leaking, and that the truck was useless and was of no value whatsoever to defendant.
The trial court entered judgment rejecting the demands of the plaintiff for the balance due on the promissory note, decreeing a rescission of the sale of the truck, and ordered that all costs incurred in the issuance and execution of the writ of sequestration be paid by plaintiff, and all other costs be paid by defendant.
The evidence shows that the defendant telephoned Mr. John D. Stubblefield, president and general manager of the plaintiff corporation, and inquired about the purchase of a second-hand truck to be used in hauling pulpwood. On the following day, December 19, 1957, the defendant, accompanied by Nathan Frazier, drove from Zwolle to Logansport, and after checking over the truck and negotiating with Mr. John D. Stubblefield, purchased the truck at a price of $1,295. After adding interest and insurance, the total price amounted to $1,582. The defendant paid $358.68 and signed the promissory note herein sued on in the amount of $1,224.
When first examining the truck, it would not start, and a booster battery was used to crank the motor. Defendant was informed that the motor had been recently overhauled, was tight, and that for a while it could be expected to be hard to start.
Later, while the defendant was driving the vehicle, before the purchase, it stopped again, and a booster battery had to be used to crank the motor. Defendant testified that he had purchased a truck from the plaintiff before, had confidence in Mr. Stub- *395 blefield, and told Mr. Stubblefield that he would take his word as his bond for the condition of the motor. A sale was consummated with the plaintiff making certain minor repairs and replacing all tires, except one, at the cost to plaintiff of $410.69. On the way home from Logansport to Zwolle, the truck stopped on three occasions.
Curtis Ezernack, an automobile mechanic of twelve years experience testified that he replaced a burned-out insert on February 3, 1958. By the use of a micrometer he determined that the main crankshaft in the motor was flat and that another insert would not last very long; he further testified that a motor with a flat crankshaft is defective. Ezernack found the motor had been overhauled and was not in good condition; that it had a “swedge” type block on it, large at the top and small at the bottom. He stated that when such a motor gets hot, the heat swells the rings and the pistons, causing the motor to tighten itself up, and that such a motor is not usable, but would give continual trouble. He further testified that a motor with a “swedge” type block would normally crank up when it was cold. He estimated the cost of a new motor for the truck at $125 or more, and the cost of labor at $35 or more.
The defendant apparently used the truck very little during the first two weeks, as he had a frame placed on it for the purpose of hauling pulpwood, and the plaintiff was called upon to replace a defective rear axle and hub. During the following four or five weeks, the defendant made approximately eleven loads hauling pulpwood, and the evidence shows that the truck continually stopped and failed to crank after the motor warmed up. In the early part of February, the defendant, accompanied by his mechanic, Curtis Ezernack, took the truck back to the plaintiff with the complaint that he could not use it, and that he wanted to swap for another truck or work something out. When the plaintiffs mechanic was unable to find, by a simple inspection, that the motor in the truck was defective, defendant informed Mr. Stubble-field that he would take the truck home and park it, as he could not use it. The evidence shows that he tried only once thereafter to use the truck. The original suit herein was filed and the truck sequestered approximately seven months thereafter.
We conclude that the evidence supports the trial court’s finding of fact that the truck was defective at the time of purchase, and we find that its use was evidently so inconvenient and imperfect that the defendant would not have purchased it had he known of its condition. The defendant and five witnesses testified that the truck was not usable in the pulpwood business because of a defective motor.
The law of this case was expressed in Reech v. Coco, 1953, 223 La. 346, 65 So.2d 790, 792, wherein the Supreme Court stated:
“Verily, a careful examination of the record is most convincing of the correctness of plaintiff’s position that there was a defect in the motor which rendered the operation of the car so imperfect as to warrant a rescission of the sale. It is manifest that, aside from any express warranty, a purchaser of an automobile is entitled to a vehicle that will meet his needs and that a car which will not run or runs intermittently or imperfectly and which requires the frequent attention of a mechanic to keep it going is an abomination to the owner.”
Counsel for plaintiff-appellant urges that-the defendant had inspected the truck, and actually operated it and had experienced the identical difficulty for -which ' he sought to have the sale annulled. However, the evidence reveals that the defects in the motor were not of such a nature as to have been discovered by simple inspection. Further, there is evidence that Mr. Stubblefield gave an explanation, deemed reasonablfe'by the mechanics, for the motor being hard td *396 crank, stating' that it had recently been overhauled and was tight.
Counsel for plaintiff further urges that the defendant’s payment on the note February 1, 1958, six weeks after the sale, waives his right to object to defects in the (truck. The cases of McLachlan v. Cuny, La.App.Orleans 1934, 156 So. 76, and Galt v. Herndon, Second Circuit, 1931, 16 La.App. 239, 133 So. 800, are cited in support of this position. In the McLachlan ■case, supra, the facts were that the defendant, after knowledge that the cows purchased would not produce milk in the quantities warranted, negotiated with the plaintiff’s attorney, and agreed in writing to pay the amount due if allowed an extension of time. This was in the nature of a compromise. In the Galt case, supra, after discovering that certain of the cattle purchased were infected with disease known commonly as “pink eye”, signed the two promissory notes which were the basis of the lawsuit, as evidence of the indebtedness.
In an article on this subject in 13 Tulane Law Review, Page 119, the author at Page 126 and 127 of said article had this to say about the McLachlan and Galt cases, supra:
“These cases are most extreme and cannot be justified even under the common law definition of ‘waiver’, because the vendee cannot be said to have intentionally relinquished his right to redhibition by this action alone. The fact that a vendee complies with his obligation to pay the price, even after he learns of the vice, should not bar him from asserting the redhibitory vice. The courts recognize this to some extent, because in the cases where the vendee paid the price knowing the goods to be defective but reserved a right of reclamation, or complained of the defect to the vendor but paid the notes rather than invite litigation, he is not estopped from asserting the red-hibitory vice.”
In the case before us, however, the record reveals that the defendant, although continually having trouble with the truck,, was still giving it a try, believing the motor was still tight since it had been recently overhauled. After the payment on the note, on February 3, 1958, his mechanic went into the motor to replace an insert, and discovered the cause of the trouble as a flat crank shaft, and confirmed the growing belief that the motor had a “swedge" type block. The truck was then immediately taken back to the plaintiff, and the plaintiff was informed of the defects.
Waiver is an equitable principle, and under the circumstances of this case, it would be a harsh rule to disallow the action of redhibition, because of a single payment on an installment note.
In the alternative, it is contended that the truck could be placed in a condition usable to defendant in hauling pulpwood with the installation of a new motor at the cost of $164, and that a mere reduction of the price should be ordered by this Court, rather than a rescission of the sale.
The case of Dupuy v. Blotner Brothers Auto Parts, Second Circuit, La.App.1942, 6 So.2d 560, was cited in support of this contention. In the Dupuy case, supra, the Court held that a defective block was only a relatively small item, and would cost, according to the testimony, only $40 to replace. The Court invoked the equitable powers conferred by Article 2543 of the LSA-Civil Code entering judgment for a reduction of the price in the amount of $40. It is noted that the trial court therein rejected the plaintiff’s action for redhibition, and the appellate court determined that plaintiff had not formally tendered the automobile back to the defendants.
We are not inclined to invoke the equitable powers conferred by Article 2543 inasmuch as the motor was the.very heart of this second-hand truck purchased to haul pulpwood. The defendant was not interested in a showpiece, but in a truck to earn a livelihood. We hesitate to declare that a defective motor in such a truck should *397 be classified as a defect which can he easily remedied; nor are we inclined to the proposition that an expenditure of $164 on a truck purchased for $1,295 is a relatively small item. Had the defendant been confronted with the proposition of purchasing the truck at $1,295 less the sum of $164 to replace the motor after the purchase, we do not believe he would have purchased the truck. We, therefore, hold that the facts of this case do not justify the application of the equitable powers granted in Article 2543.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be borne by appellant.
Affirmed.