176 So.2d 814 (1965)
Gerald I. HEBERT, Plaintiff-Appellee,
v.
CLAUDE Y. WOOLFOLK CORPORATION, Defendant-Appellant.
No. 1445.
Court of Appeal of Louisiana, Third Circuit.
July 1, 1965.
Rehearing Denied July 26, 1965.
*816 Bean & Rush, by Warren D. Rush, Lafayette, for defendant-appellant.
Simon, Trice & Mouton, by John Rixie Mouton, Lafayette, for plaintiff-appellee.
Before TATE, HOOD, and CULPEPPER, JJ.
TATE, Judge.
This is a redhibitory action. The buyer Hebert sues to rescind the sale to him of an allegedly defective refrigeration truck. The defendant seller ("Woolfolk") appeals from judgment rescinding the sale and awarding the plaintiff the return of the purchase price ($3,788), together with $500 attorney's fees.
The plaintiff Hebert purchased from Woolfolk a 1961 refrigerator truck for use in his food-distributing business. He operated this business through two corporations. The vehicle was used for about seven months by Hebert or one of his corporations, during which period it was returned numerous times for repairs by the defendant or its designees. Finally, upon learning from an independent repairman that the vehicle could never be made to function properly, Hebert tendered the truck back to Woolfolk as worthless and useless. This suit followed upon Woolfolk's refusal to accept the tender.
The seller Woolfolk makes many contentions of error upon its appeal. Their principal thrust is that redhibitory defects are not proved, that even if so the buyer has waived its rights to recover for redhibitory defects, and that at the most the buyer is entitled to a diminution of the price rather than a rescission of the sale.

I.
Although the seller Woolfolk contends otherwise, the evidence overwhelmingly proves that the truck was defective and could not maintain the freezing temperature required in the plaintiff's business as had been represented by Woolfolk's salesman at the time Hebert purchased the vehicle.
The vehicle was purchased on March 2, 1961, and delivered to plaintiff about ten days later. Tr. 154. Less than two weeks after the delivery, the truck was returned for repairs needed to the electric motor of the refrigeration unit. Thereafter, until it was tendered back on October 17th, the vehicle was in the repair shop of the defendant or its designees for from 29-32 days[1] for repairs and replacement of prematurely-worn or non-functioning motor and refrigeration parts. The non-functioning or breakage sooner or later recurred after each of the repairs made by the seller Woolfolk or its designees.
When trouble reoccurred shortly after the last repairs done by Woolfolk, the plaintiff Hebert took the vehicle to an independent repairman. The latter on October 3-5 replaced a worn clutch disc and clutch plate. When further trouble occurred on October 10th, this garageman then informed the plaintiff Hebert that the refrigeration vehicle's proper functioning could never be assured by repairs, since the defects and wearing-out of parts would continually recur because the power of the truck motor was insufficient both to run the truck and also to operate the refrigeration unit so as to maintain constantly the appropriate temperature.
On October 17th, immediately after learning this, the plaintiff then tendered the truck back to the seller. Woolfolk refused the tender on the contention that the vehicle was not defective and that any defects could be removed by minor repairs, see Articles 9, 10 of defendant's answer.
*817 We affirm the trial court's finding that the truck when sold was subject to redhibitory defects which rendered the truck virtually worthless for the purpose for which sold, with the constant necessity to repair it and its very great inconvenience in use due to the constant interruptions of any attempt at a regular delivery service.
Under the trial court's well supported factual finding, the plaintiff buyer is entitled to both the rescission of the sale and also to a return of the full purchase price because of the redhibitory defect which made the refrigeration vehicle totally useless for the purpose for which purchased. LSA-Civil Code Art. 2520; Falk v. Luke Motor Co., Inc., 237 La. 982, 112 So. 2d 683; Reeche v. Coco, 233 La. 346, 65 So.2d 790; Goff v. Dewey Oliver, Inc., La.App. 3 Cir., 137 So.2d 393.
These decisions hold that, in present circumstances, upon rescission of the sale the buyer is entitled to the return of the full purchase price, despite the usual wear and tear occasioned by the buyer's use of the vehicle over the several months during which the seller is attempting to repair it. The use of a vehicle with redhibitory defects is regarded as at the seller's risk during the period in which the seller attempts to remove the defects, if in the ultimate event the redhibitory defects are not repairable and do in fact render the vehicle totally useless for the purpose for which purchased; since this use by the buyer is continued upon the actual or implied representation of the seller that the defects are repairable and are not of a redhibitory nature entitling the buyer to rescission. In the cited decisions, the wear and tear occasioned by the duration of unsatisfactory use was equivalent to the present and 7½ months and 8,500 (claimed) miles of inconvenient and intermittent use received by the buyer in this case.[2]
Further, the redhibitory defects were not minor or easily repairable so as to constitute merely a partial failure of consideration, and so thus to authorize the court to exercise its equitable powers under LSA-C.C. Art. 2543 to decree a diminution of the price instead of a rescission of the sale, see Coco v. Mack Motor Truck Corp., 235 La. 1095, 106 So.2d 691, Dupuy v. Blotner Bros, etc., La.App. 2 Cir., 6 So.2d 460, certiorari denied. The vehicle was totally useless for the purpose for which bought; there was therefore a total instead of a partial failure of the consideration. See cases previously cited, as well as Stubblefield Chevrolet Co. v. Martinez, La.App. 3 Cir., 124 So.2d 393. The redhibitory defect is not deemed to be apparent during the period of attempted repairs by the seller, so the buyer's continued use during this time does not constitute a waiver of his right to rescind the sale when it finally becomes apparent that the defects cannot be cured. See Falk, Reeche, and Goff decisions previously cited; cf. also Brown v. Dauzat, La.App. 3 Cir., 157 So.2d 570.

II.
Following the refusal of the tender, the vehicle was kept in the back yard of the plaintiff's employee. It has never thereafter been used. The plaintiff buyer's witnesses testified without contradiction that, at the time of the tender, the vehicle was in normal condition except for usual wear and tear and the redhibitory defects (save possibly for the insignificant defect of a broken doorhandle, as to the cost of repairing which there is no evidence).
The defendant seller nevertheless contends that rescission should be defeated or else that some credit should be allowed to it because of an alleged excessive deterioration to the truck. The seller's witnesses did testify that the truck was in an unusually dilapidated condition, but their *818 testimony relates to their inspection of the vehicle in October or November of 1962, over a year after the plaintiff buyer's tender of the vehicle back to the seller had been refused by it. Tr. 210, 240.
However, the buyer is not legally responsible for such deterioration due to disuse following the seller's refusal to comply with its legal obligation to accept the return of the defective vehicle, see Port Finance Co. v. Campbell, La.App. 1 Cir., 94 So.2d 891, 895; at least in the absence of specific proof of damage for which the plaintiff is legally responsible, see Davis v. Bryan Chevrolet, La.App. 4 Cir., 148 So.2d 800.
By LSA-Civil Code Art. 2533, the buyer must bear the loss if the thing purchased has perished before he has instituted the action; but "if it has perished, even by a fortuitous event, since the commencement of the suit, it is for the seller to bear the loss."[3] (Italics ours.) Since under this provision, after suit is filed the seller is then to bear the loss of subsequent total destruction of the thing, it follows that likewise the seller should bear the loss of deterioration at least insofar as not caused by the buyer's breach of any legal obligation to the seller.[4]
A somewhat similar principle penalizing the seller who breaches his obligations of the sale is found in another instance under our law. When a buyer is evicted because of the seller's breach of the warranty of title, then, LSA-CC Art. 2507: "When, at the time of the eviction, the thing sold has lost any of its value, or is considerably impaired, either through the neglect of the buyer, or by any providential acts or unforeseen accidents, the seller is still bound to the restitution of the full price."
Likewise, when a contract of sale is subject to a resolutory condition (see LSA-CC Art. 2045) which takes place and thus dissolves the sale, then "* * * the party whose right is resolved by the happening of the resolutory condition is bound to return the thing delivered to him under this condition with all increases received pendente conditione, but without obligation to pay damages for deteriorations occurred without his fault." 1 LSA-Civil Law Translations (Aubry & Rau, Obligations, LSLI Translation, 1963), Section 302 at p. 77. (Italics ours.)

III.
The appellant seller further contends, however, that the tender was not valid because it could not restore the parties to their position prior to the sale since the plaintiff buyer had, subsequent to the sale, encumbered the vehicle with a chattel mortgage. Thus, it is argued, the buyer did not tender the seller a clear title to the vehicle.
However, the cases cited by the defendant-appellant do not support this contention and are not in point, nor could we find any Louisiana decision holding in accord with this contention by the appellant seller.[5]
To the contrary, the Louisiana jurisprudence does not regard a mortgage upon the article sold as ordinarily an obstacle to redhibition, at least where the amount owed on the mortgage indebtedness is less than the amount due for the return of the *819 purchase price.[6] Cf. also Davis v. LeBlanc, La.App. 3 Cir., 139 So.2d 224.
In our opinion, the buyer's $3,000 chattel mortgage on the defective vehicle here did not in itself defeat a valid tender by the buyer (as preventing the parties at the time of tender from being restored to their situation prior to the sale), it not appearing that the amount of the mortgage exceeds the return of the purchase price owed.
Of course, however, the present seller is entitled to obtain return of the tendered vehicle free and clear of any mortgages or encumbrances. See VIII below. There are means by which the seller may protect himself in the event the vehicle is mortgaged at the time of the tender.[7]
If a purchase money mortgage will prevent rescission of the sale of a defective vehicle or home, in many cases the buyer will be deprived of his right under Louisiana law to rescind a sale because of redhibitory defects. Probably the purchase of by far the greater number of vehicles and homes in present times is financed by such mortgages, with the value of the vehicle or residence sold being the chief security for the mortgagee. In many cases, the buyer, without sufficient financial means to pay cash for the vehicle or home, neither has the financial means to extinguish the mortgage so as to pay same and tender unmortgaged the defective vehicle or residence back to the seller.
For these reasons, and because the Louisiana jurisprudence has consistently regarded the sale of a defective vehicle as subject to rescission despite the buyer having encumbered its title with a purchase money mortgage, we must reject the appellant seller's contentions that the present mortgage constituted an obstacle to a valid tender and thus defeated the buyer's right to rescission.
We are unable to accept the seller's further arguments that the renewals of the mortgage constituted any waiver by the buyer of his right to secure rescission of the sale by reason of the redhibitory defects, nor do the decisions cited by the seller support this contention. See also Comment, 23 Tul.L.Rev. 11, 124-127 (1958).
We do believe, however, that the present seller should be assured that the title to the vehicle will be cleared of the mortgage by its return of the purchase price. See VIII below.

IV.
Nor is the buyer Hebert's right to recover for redhibitory defects limited by an express warranty of the sale allegedly in lieu of the statutory warranty against redhibitory defects, as contended by Woolfolk.
The evidence shows that the sheaf of papers containing the alleged warranty were delivered several days after the sale was agreed to. If there was any conversation concerning the warranty, even the seller's salesman admits that there was no agreement by Hebert to waive his statutory warranty.
The jurisprudence appears to be settled that, in the absence of a specific and considered agreement expressly limiting the statutory warranty, such printed warranties contained in manuals delivered in connection with the purchase of mechanical equipment do not constitute a waiver by the buyer of the statutory warranty against redhibitory defects. Radalec, Inc. v. Automatic *820 Firing Corp., 228 La. 116, 81 So.2d 830; Stevens v. Daigle and Hinson Rambler Inc., La.App. 1 Cir., 153 So.2d 511; Harris v. Automatic Enterprises, La.App. 4 Cir., 145 So.2d 335; Fisher v. City Sales & Service, La.App. 3 Cir., 128 So.2d 790. See also 24 La.L.Rev. 192, 199-200 (1964). We likewise doubt that the vendor (Woolfolk) could be relieved of its statutory liability for redhibitory defects by any specific warranty attempting to lessen the liability of the manufacturer (Volkswagen), see Fisher v. City Sales & Service, La.App. 3 Cir., 128 So.2d 790, 793.

V.
The seller Woolfolk additionally contends that the buyer's rights to recover for redhibitory defects were waived or are defeated by his resale of the vehicle to Frozen Foods, Inc. (a corporation controlled and largely owned by Hebert) in July of 1961, and by his repurchase of same from Frozen Foods in October 1961.
The substance of these contentions is that Hebert cannot recover for redhibitory defects from Woolfolk because he was not damaged by them (a) since he was not legally obligated to rescind his sale to Frozen Foods, which (b) had been for the same price as he had paid Woolfolk for the defective vehicle. Having effectively sold for the same price as he purchased, appellant contends that Hebert suffered no damage because of the redhibitory defects.
However, the evidence reveals that the transfer of the vehicle from Hebert to Frozen Foods in mid-July 1961 was in fact subject to a specific resolutory condition that the sale would be rescinded if the defects in the truck could not be corrected.
Both the plaintiff Hebert and Thomas (as president of Frozen Foods) testified that, at the time the truck was transferred by Hebert to Frozen Foods, there was a specific agreement that Hebert would take the truck back if in the future there was a reoccurrence of the inability of the truck to function properly. Tr. 150-151, 202, 205. As Hebert testified in explaining the agreement at the time of the transfer by Hebert to the corporation: "We thought it would work, at the time we transferred it to Frozen Foods. It had been repaired quite a bit prior to that." Tr. 151.
Under this resolutory condition specifically agreed to, Hebert was legally obligated to rescind the previously executed sale if the trouble in the functioning of the truck reoccurred or continued. See LSA-CC Art. 2045: the resolutory condition "obliges the creditor to restore what he has received, in case the event provided for in the condition takes place."[8] Thus, since Hebert was legally obliged to rescind the sale to Frozen Foods, we find no merit to the appellant's contention that he suffered no damage because of any binding and non-cancellable sale of the truck by him to Frozen Foods for the same price as he had paid the appellant Woolfolk for the truck.
It is further to be remembered that, at the time of the transfer from Hebert to Frozen Foods, the vendor Woolfolk was still attempting to remedy defects in the refrigeration truck as they appeared. Under the jurisprudence, the unrepairable and rescinding nature of these redhibitory defects is not deemed to have become apparent during this period and until October 1961, when the buyer learned from the independent garageman that the defects could not possibly be corrected. See I above. Frozen Foods thus did not acquire the truck from Hebert with knowledge in law that the vehicle was subject to redhibitory defects, so as to defeat its right by reason of such defects to rescind the sale from Hebert.
*821 Actually, it could also be argued that under the facts the resale and repurchase between Hebert and Frozen Foods was in effect no more than a bookkeeping transfer between two units of the same business, at least insofar as Hebert's vendor Woolfolk is concerned and insofar as Woolfolk's defense against enforcement of its statutory warranty against redhibitory defects in the vehicle sold by it. But we do not consider this contention, since we have determined on other grounds, above stated, that the Hebert-Frozen Foods transfers confer no immunity upon Woolfolk from its liability for the redhibitory defects.

VI.
In summary, then, for the reasons stated, we agree with the district court that the sale should be rescinded because of redhibitory defects and that the purchaser should recover the return of the purchase price, providing the vehicle can be returned to the present seller free and clear of any mortgages, liens, or encumbrances.

VII.
However, the appellant Woolfolk is correct in its contention that we should disallow the $500 attorney's fees awarded by the trial judgment.
The general rule in Louisiana law is that attorney's fees for the successful party are not allowed as an item of damages or costs, except where statute or a contractual provision specifically provides for their payment. See: Comment, Attorney's Fees as an Element of Damages in Louisiana, 34 Tul.L.Rev. 146 (1959), containing an extensive summary of the jurisprudence. See also, e. g., Hernandez v. Harson, 237 La. 389, 111 So.2d 320, and Loeblich v. Garnier, La.App. 1 Cir., 113 So.2d 95, concerning overruling of early decisions which had allowed attorney's fees.
In accordance with this general rule, and in a decision not called to the attention of our trial brother, our Supreme Court has specifically held that the buyer may not recover his attorney's fees as damages when he is successful in a redhibitory action, at least not unless there is a specific provision in the contract of sale authorizing them. Chauvin v. LaHitte, 229 La. 94, 85 So.2d 43. See also Comment cited, at 34 Tul.L.Rev. 149.
The award of $500 attorney's fees in the district court judgment must therefore be disallowed.

VIII.
The effect of our affirming the judgment is to hold the seller Woolfolk liable for the sum of $3,788, the return of the purchase price; but the vehicle which is to be returned to Woolfolk is, under the evidence, subject to a mortgage in the amount of $3,000 placed thereupon by the buyer to secure the money borrowed for the purchase price. See III above.
Procedures are available to the seller to protect it against return of the purchase price without cancellation of the mortgage against the returned vehicle. See Footnote 7 above. We have nevertheless concluded that, under the present circumstances (where the mortgagee is not impleaded and where the mortgage was placed upon the vehicle by the buyer independently of financing through the seller's regular course of business at the time of the purchase), it is advisable that we condition our affirmance of the judgment so as to provide that the judgment shall not be executory until the tendered vehicle is returned with certificate of title and free and clear of any mortgage or encumbrance; provided that, in default of such action by the plaintiff within thirty days of date of finality of this court's judgment (or of such reasonable extension thereof as may be permitted by the trial court), the defendant is entitled by rule, upon showing that this condition has not been complied with, to have this judgment cancelled.
Decree.
For the reasons above assigned, the district court judgment is amended by deleting *822 the award of five hundred dollars attorney's fees; it is affirmed insofar as the defendant was held liable in the amount of $3,788 plus legal interest from date of demand.
This affirmance, however, is conditioned as follows: The judgment shall not be executory until the tendered vehicle is returned with certificate of title and free and clear of any mortgage or encumbrance; provided that, in default of such action by the plaintiff within thirty days of date of finality of this court's judgment (or of such reasonable extension thereof as may be permitted by the trial court) the defendant is entitled by rule, upon showing that this condition has not been complied with, to have this judgment cancelled.
As thus amended, the trial court judgment is affirmed in all other respects. The defendant-appellant is cast with the costs of this appeal.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] March 22, 25, 31; April 3, 26; May 1-4, 23; July 6, 12-17, 20, 26; August 31-September 6; September 14-16.
[2] The cited decisions respectively note mileage and duration of the unsatisfactory use of the defective vehicles as follows: Falk, 14,000 miles and 3½ months; Reeche, 9,600 miles and 9 months; Goff, 10,254 miles and 12 months.
[3] The quoted provision was not found in the French Code or the Louisiana Civil Code of 1808; it was first added in the Louisiana Civil Code of 1825. A few early cases concerning slaves afford the only jurisprudential applications of this code article.
[4] And upon the seller's refusal to accept tender of the defective vehicle, we do not believe the buyer was under any legal obligation to provide garaging, watchmen, or other exceptional care of the vehicle.
[5] We did find two cases from common law jurisdictions which did indicate that, under some circumstances at least, an existing chattel mortgage might prevent a valid tender and thus defeat rescission in those jurisdictions. Bennett v. Emerald Service, Inc., 157 Neb. 176, 59 N.W.2d 171 (1953); Keith v. Schuck, 68 Colo. 480, 190 P. 530 (1920).
[6] See, e. g.: Kennedy v. Jacobson-Young, Inc., 244 La. 191, 151 So.2d 368; Davis v. Bryan Chevrolet, Inc., La.App. 4 Cir., 148 So.2d 800, certiorari denied; Route v. Smith Chevrolet, La.App. 1 Cir., 128 So.2d 58.
[7] Cf., e.g., Davis v. LeBlanc, La.App. 3 Cir., 149 So.2d 252, where the refund of the sales price was deposited into court with a rule to show cause why the mortgage should not be cancelled and the surplus accepted by the buyer in full satisfaction of the return of the purchase price.
[8] See 1 LSA-Civil Law Translations (Aubry & Rau, Obligations, LSLI Translation 1965), Section 302 at p. 77cc: "Where the resolutory condition is fulfilled, the obligation and the right corresponding to it are resolved; and the resolution has retroactive effect insofar as this is necessary in order to place the parties in the same position which they occupied at the time the obligation was formed."