248 So.2d 27 (1971)
John A. BROWN
v.
MID CITY MOTORS, INC., et al.
No. 8307.
Court of Appeal of Louisiana, First Circuit.
April 19, 1971.
Rehearing Denied May 31, 1971.
J. R. Coxe, III, Baton Rouge, for appellant.
George R. Covert and Donald R. Weber, Baton Rouge, for appellees.
Before LANDRY, ELLIS and BLANCHE, JJ.
ELLIS, Judge.
This is a suit by John A. Brown against Mid City Motors, Inc., and Ford Motor Company, for rescission of the sale to him of a new 1966 Ford Ranchero truck. Plaintiff further demands the return of the purchase price, and damages, amounting in all to $2,828.00. Ford filed peremptory exceptions, which were sustained, and is no longer a party to the case. After trial on the merits, judgment was rendered in favor of plaintiff and against Mid City for $2,600.00, and defendant has appealed.
Plaintiff acquired the truck from defendant in August, 1966, for the price of *28 $2,675.00, which he satisfied by trading in a 1965 Thunderbird. He used the truck to go to and from his work in Norco, Louisiana, a distance of about 60 miles from his home in Baton Rouge, driving about 2000 miles per months.
Plaintiff testified he began having trouble with the truck when it had about 2000 miles on it. At that time, the engine began missing and cutting out. During the next three months, defendant performed three tune-ups, one major, on the engine in an effort to alleviate the difficulty, but was unable to do so. When the vehicle had about 8000 miles on it, it began dying and not re-starting when it go hot. Plaintiff stated that after being driven about 40 miles the engine would cut out, and could not be restarted until it had cooled off.
Between December 28, 1966, and June 27, 1967, plaintiff brought the truck into Mid City with the same complaint on fifteen occasions. During this period of time, it remained in Mid City's hands for 65 days, during which time defendant replaced the starter bendix, the engine fly wheel, the lifters, the gas tank, the gas line, the carburetor, the fuel pump, twice, and did various other work.
Mr. Brown testified that on June 27, 1967, he was told by a Mr. Adams of Mid City that there was nothing else they could do. Plaintiff left the truck and the key thereto with defendant, and turned the matter over to his attorney. This suit was filed on April 30, 1968.
The foregoing testimony of Mr. Brown was corroborated to a large extent by his wife, and by a Mr. Deale, who drove him to work when the truck was not functioning.
Mid City was unable to produce one witness who had any independent recollection of Mr. Brown or his problems with the truck. They produced a number of repair orders which were carried out under the factory warranty, reflecting that the car was brought in on ten occasions between January 17 and June 28, 1967. Their shop foreman and former assistant service manager testified that these reflected only normal maintenance on the vehicle. The last of these reflects a total mileage of 17,989 miles on the truck when it was left with defendant. They reflect, among other things, a minor tune-up and new fuel pump on February 3, 1967; a complaint of engine cutting out and quitting on February 6: the value lifters replaced on February 27; an order to check engine and electrical system on May 22; starter or fly wheel trouble on May 25; a complaint of engine stalling out and not re-starting and the alternator replaced on May 31; a complaint that the motor would not run, and the fuel pump replaced on June 19; and a final complaint that the truck could not be kept running on June 28.
The trial court concluded that there was a redhibitory defect in the truck, which existed from the time of the sale until plaintiff turned the truck in to defendant. He held the plaintiff entitled to rescission of the sale and the return of the purchase price.
Defendant has assigned four specifications of error. The first of these is that the judge erred in failing to find plaintiff's demand had prescribed under Article 2534 of the Civil Code, which provides:
"The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale."
It has been held, however, that, if the seller has attempted to remedy the defect, prescription does not begin to run until he abandons his efforts. Motorola Aviation Electronics v. Louisiana Aircraft, 172 So.2d 118 (La.App. 1 Cir. 1965). The last efforts to repair the truck were made in June, 1967, and the suit was filed on April 30, 1968, less than one year thereafter. Defendant's contention is without merit.
Defendant next claims that plaintiff failed to carry the burden of proving the existence of a redhibitory defect at the time of the sale.
*29 Article 2520 of the Civil Code provides as follows:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
Article 2530 of the Civil Code provides:
"The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale."
In Glenn v. Caire, 164 So.2d 656 (La. App. 3 Cir. 1964), the court said:
"It is settled that in an action to set aside a sale on a plea of redhibition where complicated machinery is involved, it is not necessary for the buyer to seek out and prove the particular and underlying cause of the defect which makes the object sold unfit for its intended use. It is sufficient that he allege and prove that such a defect exists."
In Ditta v. Polk Chevrolet, Inc., 196 So.2d 672 (La.App. 1 Cir. 1967) we said, relative to the above:
"In applying the above principles the courts of this state have held that a plaintiff need only prove that the thing purchased has failed to perform in the manner in which it was intended to perform, and that this failure was under conditions of normal use."
Plaintiff herein has borne his burden of proof. He has shown that the truck will not go more than 40 miles without stalling out, and that defendant has been unable to remedy the defect. Since the difficulty manifested itself about one month after the truck was purchased, we think it reasonable to inter that the cause of the defect was present when it was purchased, and that it is inherent. The latter conclusion is supported by the fact that after extensive repairs and replacement of major components, the truck still would not perform satisfactorily. We find it strange, as did the trial judge, that defendants were unable to produce any substantial evidence to refute plaintiff's testimony, despite the fact that they still have possession of the truck, and performed all of the repairs on it. We find the second specification of error to be without merit.
In its third specification of error, defendant complains that the court awarded plaintiff an amount larger than that alleged and prayed for as the purchase price of the vehicle. In his petition, plaintiff alleged the purchase price to be $2,328.00. He also alleged he had suffered damages in the amount of $500.00. He prayed for an award of $2,828.00. The trial judge found he was entitled to the return of the purchase price, and signed a judgment for $2,600.00, although the record reflects the price to be $2,675.00.
When the retail buyer's order, which reflected the price, was introduced into evidence, it was objected to on technical grounds, but not on the basis of its substance. It was properly admitted into evidence by the trial court, and had the effect of enlarging the pleadings as to the actual purchase price. Since the award made is less than the amount prayed for, we find no error in the amount of the judgment, since it is supported by the evidence and not limited by the pleadings. Articles 862, 1154, Code of Civil Procedure.
Finally, defendant complains of the failure of the trial court to give a credit for depreciation and use of the vehicle during the time it was in plaintiff's possession. It points to the fact that there were almost 18,000 miles on the vehicle when it was returned, and alleges that it is entitled to a credit for some amount for that reason, since he can in no other way *30 be returned to the status quo. He relies on the cases of Bergeron v. Mid City Motors, Inc., 162 So.2d 835 (La.App. 1 Cir. 1964); Kiefer v. Bernie Dumas Buick Company, 210 So.2d 569 (La.App. 4 Cir. 1968); and Gauche v. Ford Motor Company, 226 So.2d 198 (La.App. 4 Cir. 1969). These cases have held that the courts have the discretion to allow such a credit if it is felt to be justified by the record.
In the Bergeron case, supra, this court affirmed, without comment, a district court judgment which allowed such a credit. The other two cases use the Bergeron case as authority. No basis for the decision is given either by this court or the trial judge in the Bergeron case.
Without further comment as to the validity of the foregoing decisions, we find that there is no error in the failure of the trial judge to allow such a credit. The truck was not suitable for the purpose for which it was intended, and we can see no reason why the plaintiff should be penalized because he continued to use the vehicle which defendant was attempting to repair it. In the case of Hebert v. Claude Y. Woolfolk Corporation, 176 So.2d 814 (La.App. 3 Cir. 1965), the following language appears:
"Under the trial court's well supported factual finding, the plaintiff buyer is entitled to both the rescission of the sale and also to a return of the full purchase price because of the redhibitory defect which made the refrigeration vehicle totally useless for the purpose for which purchased. LSA-Civil Code Art. 2520; Falk v. Luke Motor Co., Inc., 237 La. 982, 112 So.2d 683; Reeche v. Coco, 223 La. 346, 65 So.2d 790; Goff v. Dewey Oliver, Inc., La.App., 3 Cir., 137 So.2d 393.
"These decisions hold that, in present circumstances, upon rescission of the sale the buyer is entitled to the return of the full purchase price, despite the usual wear and tear occasioned by the buyer's use of the vehicle over the several months during which the seller is attempting to repair it. The use of a vehicle with redhibitory defects is regarded as at the seller's risk during the period in which the seller attempts to remove the defects, if in the ultimate event the redhibitory defects are not repairable and do in fact render the vehicle totally useless for the purpose for which purchased; since this use by the buyer is continued upon the actual or implied representation of the seller that the defects are repairable and are not of a redhibitory nature entitling the buyer to a rescission."
We also note that in such a situation, the average buyer is unable to afford another vehicle while he engages in protracted litigation over a defective automobile, and must perforce cooperate with the dealer during his attempts to repair the defects.
The judgment appealed from is affirmed, at defendant's cost.
Affirmed.