247 So.2d 266 (1971)
MEDIA PRODUCTION CONSULTANTS, INC.
v.
MERCEDES-BENZ OF NORTH AMERICA, INC., Cookie's Auto Sales, Inc., and Oliver Cinnater, D.B.A. Crescent City Motors.
No. 4250.
Court of Appeal of Louisiana, Fourth Circuit.
April 5, 1971.
Rehearing Denied May 10, 1971.
Writ Granted June 21, 1971.
Steeg & Shushan, Donald A. Meyer, New Orleans, for Media Production Consultants, Inc.
Taylor, Porter, Brooks & Phillips, John L. Glover, Baton Rouge, Monroe & Lemann, Stephen B. Lemann, New Orleans, for Mercedes-Benz of North America, Inc.
Before REGAN, CHASEZ and TAYLOR, JJ.
CHASEZ, Judge.
This appeal is from a judgment in favor of plaintiff-appellant, Media Production Consultants, Inc., (Media) rescinding the sale of a 1968 Mercedes-Benz 250 Phase II automobile and awarding plaintiff $7,750.60, with legal interest from date of judicial demand and for all costs against defendant, *267 Cookie's Auto Sales, Inc. However, the judgment dismissed Media's suit as against defendants' Mercedes-Benz of North America, Inc. (MBNA) and Oliver Cinnater, d/b/a Crescent City Motors (Crescent).
Plaintiff has appealed only from that portion of the judgment dismissing its suit against Mercedes-Benz of North America, Inc.
It appears from the record, and the trial judge so found, that Media purchased what is euphemistically referred to in the vernacular as a "lemon". Among the defects present in the car were interior trim that peeled off the front seat from the moment of purchase, interior lights did not work, transmission problems, frequent stalling, especially in traffic, airconditioning unit lost freon and blower would adjust itself frequently from high to low, rear window channels deteriorated, excessive brake squeal, rear axle howl, harmonic vibration which was indigenous to this type automobile and could not be remedied, paint on right front fender oxidized and faded. Many of the defects were adjusted or the defective part replaced, but the car was constantly in the shop and finally Mr. Carl Neuenhaus, President of Media and who drove the car, abandoned it at Crescent City Motors in New Orleans.
MBNA has attempted to argue that since repairs and adjustments were made which were apparently accepted by Neuenhaus that the plaintiff could not now seek to rescind the sale. Even assuming that some of the repairs made were accepted by Neuenhaus, the automobile was not free of defects at the time it was tendered to Crescent City Motors. The abhorrent harmonic vibration persisted and could not be remedied. A harmonic vibration was described as a high pitch howl which occurred when the car reached a speed of approximately 50 miles per hour. Since Neuenhaus testified that the car was used in Media's business and that he travelled a good deal to several states, it is apparent that the car would much of the time be driven in excess of 50 miles per hour. For this reason alone we are of the opinion that this was a defect which rendered the car unfit for the purpose intended and warrants a recision of the sale. The fact that the harmonic vibration might be corrected at some time in the future is of no avail, because the fact that defects which are present at the time of the purchase and are subsequently remedied does not affect the buyer's right to a recision of the sale. Reech v. Coco, 223 La. 346, 65 So.2d 790 (1953); Cain v. Rapides Dodge, Inc., La. App., 207 So.2d 918 (3rd Cir. 1968).
We conclude that the portion of the lower court's judgment finding the vehicle to be so defective as to warrant a recision of the sale is manifestly correct and we affirm it accordingly.
A much more serious question pursued herein by plaintiff is whether Media should be allowed to recover against Mercedes-Benz of North America (MBNA).
The Mercedes-Benz automobile was manufactured by Daimler-Benz Aktiengesellchaft (DBAG), a corporation organized under the laws of Germany, not qualified to do business in Louisiana or the United States, nor has it done any business here. By an agreement DBAG entered into with another corporation, Daimler-Benz of North America (DBNA), DBNA agreed to import Mercedes-Benz automobiles into certain designated territories. DBNA then entered into an agreement with MBNA which agreement established MBNA as the authorized distributor of Mercedes-Benz automobiles in the United States and which permitted MBNA to establish franchise dealerships throughout the country. MBNA sells the vehicles to the dealers who, in turn, sell them to the customers.
DBAG sold the automobiles to DBNA, who in turn sold them to MBNA, who then *268 sold them to the dealors under the distributorship agreement. The warranties between DBAG and DBNA covered defects in material and workmanship. DBNA made no warranty of any kind with regard to any Daimler-Benz product sold by them under their distribution agreement with MBNA. MBNA received the same warranty from DBAG as was given to DBNA. MBNA was required to "grant to its dealers a warranty at least as favorable as that granted to it (unless and to the extent otherwise agreed upon in writing)." However, the warranties of DBAG extend "solely to MBNA and shall not extend to any dealers or retail purchasers in the Territory". MBNA was required to issue a separate warranty to its dealers. The warranty provided by MBNA to its dealers reads in part as follows:
"Seller (MBNA) (sic) warrants (except as hereinafter provided) each part of each new Mercedes-Benz motor vehicle sold by dealer and operated in North America; i. e., the U.S.A. and Canada (including each part of any accessory or equipment thereon manufactured by Daimler-Benz A.G. or supplied by Mercedes-Benz of North America, Inc.) to be free from defects in material and workmanship under normal use and service until such motor vehicle has been operated for a distance of 24,000 miles or for a period of 24 months from the date of delivery to the original purchaser or from the date of initial operation, whichever event shall first occur.
"Seller's obligation under this warranty is limited to the replacement or repair at Seller's option, without charge for installation at Seller's place of business, of such parts as shall be returned to and acknowledged by Seller to be defective."
* * * (Specific exclusions omitted).
"This warranty is expressly in lieu of all other warranties and representations, expressed or implied, and of all other obligations or liabilities on the part of the Seller, Mercedes-Benz of North America, Inc. and Daimler-Benz A. G. Seller neither assumes nor authorizes any other person to assume for it any other liability in connection with such motor vehicle."
The warranty which runs from the dealer to the purchaser is essentially the same except for sections (B) and (C), which read:
"B. OWNER'S RECOURSE TO DEALER
"All transactions involving recourse under the provisions of the warranty as provided by the dealer are between the dealer and his customer and should in no way involve Mercedes-Benz of North America, Inc. with which the dealer has a separate agreement.
"C. DEALER'S RECOURSE TO MERCEDES-BENZ OF NORTH AMERICA, INC.
"After the dealer has performed warranty service for his customer, the dealer will be entitled to credit therefor from Mercedes-Benz of North America, Inc. under the terms of these Claims Policies and Procedures."
Under the various warranties there is no express warranty which runs from MBNA to the purchaser. The warranties have been limited to each set of parties to the various agreements.
Neither is there any implied warranty which runs from MBNA to Media. MBNA was not the vendor so there is no warranty which would accompany the sale. MBNA did not manufacture the automobile, nor is it an agent of the manufacturer under the terms of the agreement, therefore there is no warranty of fitness which would accompany the manufacture of the automobile.
The manufacturer is located in Stuttgart, Germany and is not qualified to do business *269 in the United States and for this reason, apparently, was not even made a defendant in the suit. Therefore the question of whether the "long-arm" statute would reach to Germany is not before us.
Plaintiff has attempted to show that an implied warranty exists because it argues MBNA held itself out as the manufacturer. We do not find this to be the case, however, because there is no evidence to indicate MBNA labeled the product as its own, nor did it advertise the product as its own, which are criteria to be established under Penn v. Inferno Manufacturing Corporation, La.App., 199 So.2d 210 (1st Cir. 1967).
Even if it could be said that MBNA did advertise the product as its own, there was no proof submitted to the lower court which would establish that Media, through Neuenhaus, relied on any advertisements as inducements to purchase the car. See Penn v. Inferno Manufacturing Corp., supra.
We are constrained to conclude that the lower court properly dismissed plaintiff's suit against MBNA. It appears that Daimler-Benz Aktiengesellschaft, the manufacturer, has successfully insulated itself from suit by a dissatisfied American purchaser unless the purchaser engages in a trip to Stuttgart, Germany; a disagreeable situation, but nevertheless within the laws of contracts.
As hereabove stated, Media Production Consultants, Inc. appealed from the judgment of the trial court only insofar as it dismissed its suit against Mercedes-Benz, Inc. Our judgment is therefore with reference to Mercedes-Benz of North America, Inc. only.
For the assigned reasons, the judgment in favor of defendant, Mercedes-Benz of North America, Inc., dismissing the suit of plaintiff, Media Production Consultants, Inc. at its costs, is affirmed.
Affirmed.