LANDRY, Judge.
Plaintiff, J. Y. Hargroder d/b/a H and H Sand and Gravel Company (H & H), brings this action ex contractu to recover money due pursuant to a subcontract for dirt hauling entered into with defendant DeWitt and Guy, Inc. (D & G), which said corporation was in turn the subcontractor of Delta Paving Company (Delta), prime contractor under an agreement with the Department of Highways, State of Louisiana (Department) to construct a segment of highway known as Port Allen-Plaquemine Highway situated in West Baton Rouge and Iberville Parishes. Named defendants herein are Trinity Universal Insurance Company (Trinity), surety on the bond of D & G in favor of the prime contractor, Delta, and United States Fidelity and Guaranty Co. (U S F & G), surety on Delta’s bond as prime contractor in favor of the Department. From a judgment in favor of plaintiff and its assignee, Louisiana National Bank (Bank), against Trinity and U S F & G, *135 said defendants have appealed. We find that the trial court has correctly resolved all issues presented for determination and accordingly affirm his decision.
Narration of some pertinent background information is necessary to an understanding of the questions presented on this appeal.
It is undisputed that H & H desired to obtain a subcontract to perform the fill (dirt hauling) included in the above mentioned highway construction project. Being unable to furnish the performance bond required of subcontractors, H & H prevailed upon D & G, which latter concern was not engaged in the business of hauling dirt, to secure a subcontract from Delta for this work. In turn D & G farmed out the dirt hauling to H & H on August 9, 1960. The performance bond required of D & G was executed in Delta’s behalf by Trinity as surety. The subcontract between H & H and D & G provides an override of 4‡ per cubic yard on all dirt hauled by H & H.
From the date of the contract until November 2, 1961, H & H hauled a large quantity of fill for which payment was periodically made by Delta to D & G at the price stipulated in the initial subcontract. From the amounts thus received, D & G deducted its override and paid the balance to H & H. It is conceded by all concerned that as of November 2, 1961, H & H discontinued all work on the proj ect and thereafter hauled no dirt whatsoever. Whereas numerous complaints were made by Delta to D & G concerning the failure of H & H to furnish adequate trucks to enable the job to proceed at the contract specified pace, it is acknowledged that H & H was never placed in default by either Delta or D & G. It is further admitted that commencing September 6, 1961, D & G, upon insistence of Delta, engaged other trucks to haul simultaneously with H & H which dual operation continued until H & H ceased operation on November 2, 1961, on which date all dirt hauling on the project was substantially completed.
For various reasons unnecessary to mention here, both H & H and D & G became financially involved during the course of their relationship. H & H became delinquent in the payment of bills for fuel and other expenses incident to the operation of its trucks. Before trial D & G was in bankruptcy. These unanticipated occurrences resulted in the filing of three suits, two of which were by suppliers of fuel and material to both H & H as well as the trucking concern engaged by D & G to assist H & H in performing the contract. All matters in the remaining two suits were compromised and settled leaving only the claim of H & H which is presently before the court.
Plaintiff’s petition alleges the hauling of a large quantity of dirt for which payment has not been made by either D & G or Delta. Although defendants concede H & H hauled considerable dirt for which it received no payment, nevertheless respondents contend plaintiff is not entitled to any payment therefor because plaintiff allegedly breached the contract by failing to provide adequate trucks to diligently prosecute the work thus forcing D & G to complete the project.
On this basis defendants contend plaintiff is in violation of the following contract provisions: Article II which obligates H & H to furnish at its expense all labor, materials, tools, machinery and supervision to complete the work; Article IV, pursuant to which plaintiff assumes all liability for performance of the work undertaken; Article IX, in which plaintiff acknowledges his possession of equipment sufficient to meet the performance time stipulated in the prime contract and agrees to reimburse Delta for any loss occasioned under said provision due to plaintiff’s failure to timely complete the dirt hauling; Article XVI, which stipulates in effect that if H & H failed its obligations or made a general assignment for benefit of creditors, then D & G, upon three days written notice, could take over the work and complete the project at plaintiff’s expense, and Paragraph 7 of an addenda authorizing *136 D & G to use its own or engage other trucks for hauling in the event H & H failed to furnish sufficient employees and trucks suitable for the work as determined by D & G.
Alternatively, defendants stipulate that if any amount is due H & H herein, the sum of $17,877.15 awarded by the trial court is correct, but that the trial court erred in failing to allow certain offsets against said sum as hereinafter noted.
We first consider defendants’ contention plaintiff is not entitled to any award whatsoever for alleged breach of contract. Although the agreement obligates plaintiff to provide adequate equipment and timely perform as suggested by defendants, it is acknowledged by defendants that plaintiff was never put in default. Moreover, as we read the contract, Article XVI and addenda Paragraph 7 clearly vest D & G with the option, in the event of plaintiff’s noncompliance, to either take over the work completely on three day written notice to plaintiff, oust plaintiff from the project and complete the job at plaintiff’s expense, or use its own or hired trucks when deemed necessary. While defendants complain bitterly that the trial court erroneously interpreted the contract, the evidence established beyond doubt that D & G elected to exercise that provision of the agreement giving it the privilege of engaging other trucks. Having opted to exercise this privilege, D & G may not be heard to complain of plaintiff’s alleged failure to perform. It is not entitled to a dual remedy. The amount awarded plaintiff below does not include payment for any fill hauled by anyone other than plaintiff. It further appears the sum paid by D & G to the other haulers engaged would have been due plaintiff had plaintiff performed this work. We conclude therefore the trial court properly held H & H entitled to payment of the sum awarded.
Appellants alternatively claim offsets against the judgment in plaintiff’s favor in the following amounts: (1) $4,487.26 expended for supervisory labor to oversee the hauling done by D & G; (2) $538.47 as employer’s contribution to social security taxes paid on supervisory labor; (3) $450.00 rental for pickup truck needed by supervisory personnel employed by D & G; (4) court costs expended in defense of the two other suits which were compromised, and (5) legal fees accrued and to be incurred in the sum of $5,040.75 in defense of this present action and the two companion suits previously settled. Additionally, appellants complain that the trial court erroneously allowed legal interest from date of judicial demand on the amount awarded plaintiff. In this latter connection it is argued that interest is not assessable in view of Article XVIII of the contract between H & H and D & G, the pertinent portion of which will be considered hereinafter.
Considering first the claim for offset of supervisory expenses, truck rental and taxes in the aggregate of $5,475.73, we find none recoverable by D & G under the circumstances. No demand was made upon H & H to supervise the activities of such other haulers nor does any provision of the contract indicate an intention of the parties to charge H & H with such supervisory expenses in the event D & G elected to take advantage of this clause in the contract. Considering the terms of the contract as a whole, we are of the firm conviction D & G was given a choice of two alternatives in the event H .& H did not perform satisfactorily. First, it could have defaulted H & H and taken over the entire project and charged the legitimate costs of completion to H & H. Secondly, it could engage additional trucks to work concurrently with those being furnished by H & H in which event the cost of providing such additional trucks would be borne by D & G. Having chosen the latter alternative, D & G may not now invoke any of the benefits which may have flowed had it initially selected the other option. Where alternative remedies are specified in a contract the party entitled to relief may not seek both.
*137 Nor do we find any merit in the contention the costs of court in the two cases consolidated herewith should not be charged to appellants. The record indicates that the instant suit and the two other consolidated causes arose because of the failure of D & G to pay H & H in full notwithstanding the' contract was completed and D & G had received full payment from Delta but nevertheless commenced bankruptcy proceedings some time prior to institution of the three actions. Under these circumstances it ill behooves appellants to argue its nonliability for the costs of suits which its own actions brought about.
For the same reasons appellants are not entitled to the attorney’s fees claimed. Moreover, as regards the right to recover attorney’s fees, it is settled law that such fees are not recoverable unless their payment is expressly stipulated for by statutory or contractual provision. See Hebert v. Claude Y. Woolfolk Corporation, La. App., 176 So.2d 814, and authorities therein cited. While there are certain provisions in the contract under consideration which obligate H & H to pay specific claims for which D & G may become liable due to remission on the part of H & H, a careful consideration of the pertinent provisions discloses no express stipulation of attorney’s fees. It follows, therefore, attorney’s fees are not recoverable by appellants.
There remains the claimed offset for interest. In this connection appellants rely upon the following language Contained in Article XVIII of the agreement:
Notwithstanding any other provision of this agreement, contractor is hereby authorized to retain, without liability for interest, until the final disposition of all claims which are made against subcontractor, contractor or owner and for which contractor is claimed responsible, a sufficient portion of the contract price to protect contractor for and against any and all claims and from all loss, cost, liability, damage and reasonable expenses arising therefrom or in connection therewith.
The foregoing article of agreement obviously contemplates withholding of funds by D & G sufficient to pay claims filed against the subcontractor prior to full and final payment of the entire contract price due H & H. The proviso in question is inapplicable in the present instance inasmuch as the record discloses there were no liens against H & H upon completion of the contract. As of completion date of the contract, H & H was entitled to payment in full at the stipulated unit prices as there were then no claims or liens outstanding. It appears the liens in question arose subsequent to completion date, due at least partially to the failure of D & G to pay H & H notwithstanding receipt by the former of the full contract price from the prime contractor, Delta. Moreover, some of the liens involved in the associated cases resulted from the claims of furnishers of material supplied to the hauler engaged by D & G. For these latter claims H & H are not responsible as hereinabove indicated.
The intervention of Louisiana National Bank was recognized on the basis of an assignment from H & H of the sums due from D & G. The validity of this assignment is not contested by appellants who simply maintain their arguments against the claims of H & H are equally applicable to both H & H and intervenor.
Accordingly, the judgment of the trial court is affirmed. Costs to be paid by appellants Trinity Universal Insurance Company and United States Fidelity and Guaranty Co.
Affirmed.