477 So.2d 1155 (1985)
COLEMAN OLDSMOBILE, INC.
v.
NEWMAN AND ASSOCIATES, INC. et al.
No. 84 CA 0737.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
Rehearing Denied November 21, 1985.
*1157 Robert L. Kleinpeter, Louis M. Phillips, Richard Creed, Jr., Baton Rouge, for plaintiff-appellee.
W. Hugh Sibley, Clifton T. Speed, Greensburg, for defendants-appellants.
Before LOTTINGER, COLE and CRAIN, JJ.
CRAIN, Judge.
The trial court rendered judgment in favor of Coleman Oldsmobile, Inc. (Coleman) in the sum of $15,000 representing the unpaid purchase price of a 1979 Winnebago motor home. Judgment was further rendered against E.C. Newman, plaintiff in reconvention, dismissing an action in redhibition. From this latter judgment plaintiff in reconvention appeals.

FACTS
On May 29, 1980, Mr. E.C. Newman agreed to purchase a new 1979 model Winnebago motor home from Coleman. The agreed upon price was $17,000. On May 29, 1980, Newman made a $2,000 downpayment and on June 5, 1980, he tendered the balance due by check written in the amount of $15,000, dated June 5, 1980. The motor home had been transported by Winnebago to Coleman on November 17,1978, and was accepted by Coleman on November 21, 1978.
On June 7, 1980, Mr. and Mrs. Newman and two of their children drove their new motor home to Mobile, Alabama for a weekend excursion. Its maiden voyage was, unfortunately, plagued with difficulties. The air conditioning unit failed to operate properly, at times blowing only hot air. The entire electrical system went out several times. While traveling at night at 55 miles per hour the headlights suddenly went out, forcing the driver to maneuver the vehicle to the shoulder of the Interstate in complete darkness. While driving with the cruise control in operation the accelerator automatically floored, causing the vehicle to reach a speed of 90 miles per hour. Newman parked the motor home overnight (Saturday night) in Biloxi. On Sunday morning the vehicle failed to start and Newman had to hire two mechanics to start it. Upon arrival at his home that afternoon Newman stopped the vehicle in front of his house to unload the luggage and it would not start. It had to be towed to its parking spot.
Newman immediately called a Coleman representative who advised him to bring the vehicle in for servicing. Newman told him that Coleman could pick the vehicle up but he could not bring it in because it would not start. Several telephone conversations between Newman and Coleman employees took place during the following weeks concerning the repair of the motor home. In the meantime, on approximately June, 9,1980, Newman stopped payment on the $15,000 check. Finally, on August 13, 1980, Coleman employees transported the vehicle by wrecker from Newman's home to Community Motors in Hammond in order to have the vehicle repaired at an authorized Chrysler repair shop. The water pump pulley was found to be bent, which supposedly accounted for the problems encountered *1158 with broken alternator belts which in turn caused electrical problems. The pulley was straightened but not replaced because the part was not then currently in stock. The distributor which had supposedly caused the starting problem was allegedly repaired, and the blowing of heated air by the air conditioner was allegedly corrected.
Newman then picked up the vehicle from Community Motors to take it home. He stopped along the way and again the vehicle would not restart. It had to be towed to his home where it remained until approximately one week before trial. At that time by court order, the service manager of Community Motors and a Chrysler Corporation representative were authorized to check out the motor home to determine whether it was then in working condition. A new battery was installed in order to crank it. The motor home was driven a few miles when it began to overheat. It was then towed to Community Motors in Hammond. It was noted that the alternator and water pump belts were missing and the water pump pulley was still bent. In addition, neither the air conditioner nor the cruise control was found to be in operating order. The vehicle was then driven back to Newman's home where the new battery was removed and the vehicle left.

TRIAL COURT
The trial court held that rescission of the sale would not be allowed because Newman failed to give Coleman the opportunity to correct the alleged redhibitory defects. The court stated that Newman would be allowed to present evidence relative to the cost of repairing the motor home for purposes of reducing the purchase price, but Newman refused to do so, therefore, his reconventional demand was dismissed.
Newman appeals alleging as error (1) the trial court's failure to rescind the sale, (2) the trial court's failure to award attorney's fees and damages, and (3) the trial court's failure to find that Coleman misrepresented the motor home as new when it was actually a used motor home.

REDHIBITION
In the first assignment of error, appellant alleges that he adequately proved that redhibitory vices existed at the time of sale making the motor home unfit for its intended use or its use so inconvenient that Newman would not have purchased the vehicle had he known of the defects at the time of the sale. He argues that Coleman had knowledge of the defects at the time of the sale and was not in good faith, consequently, Newman was not required to tender the vehicle for repair prior to instituting a redhibitory action. Newman also contends that Coleman was given adequate opportunity to repair the vehicle prior to July 16, 1980, and refused to do so.
La.C.C. art. 2520 defines redhibition as "the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." To be successful in a redhibitory action, the buyer must prove that the redhibitory vices existed at the time of the sale. La.C.C. art. 2530. A seller in good faith is one having no actual or constructive knowledge of the redhibitory defects. Should the good faith seller fail to repair or remedy the defect, or be unable to do so, he must restore the purchase price to the buyer as well as reimburse the buyer for reasonable expenses of the sale. La.C.C. art. 2531. In a continuing line of jurisprudence this court has held that the seller should be given the opportunity to repair the defects before the purchaser may commence an action to rescind the sale. Welch v. Community Motors, Inc., 422 So.2d 1196 (La. App. 1st Cir.1982), writ denied, 426 So.2d 181 (La.1983); Evangeline Medical & X-Ray Distributors Corp. v. Coleman Oldsmobile, Inc., 402 So.2d 208 (La.App. 1st Cir.1981); Purvis v. Statewide Trailer Sales, Inc., 339 So.2d 403 (La.App. 1st Cir. 1976).
In its findings of fact the trial court stated that appellant failed to prove that *1159 the seller was given the opportunity to repair the defects. Our review of the facts convinces us this finding was manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The record reflects Newman experienced numerous difficulties with the vehicle on its first and only outing. Immediately upon arrival at his home after the weekend outing, Newman telephoned Coleman representatives informing them of the problems encountered with the vehicle. They advised Newman the vehicle should be brought in for repairs. Newman replied that he was unable to start the vehicle and thus could not bring it in, therefore, Coleman should transport the vehicle from Greensburg to Baton Rouge for him. The testimony is ambiguous in reference to when Coleman offered to transport the motor home to Baton Rouge for repairs. However, on August 13, 1980, Newman refused to allow the vehicle to be taken to Coleman, but agreed to allow Coleman to have the vehicle repaired by Community Motors, a Chrysler authorized warranty repair shop in Hammond. Two Coleman employees, Mr. Sam Pourciau, a mechanic, and Mr. Russell Barbay, the service and parts director, managed to start the vehicle at Newman's home by "jumping" the starter solenoid and using jumper cables for the battery. Mr. Pourciau expressed the opinion that there was a "lot of wrong" with the vehicle on that date. The motor home remained at Community Motors for approximately two weeks. After repairs were allegedly completed by Community Motors, Newman drove the vehicle towards his home, stopped along the way, and was again unable to start the motor home. It then had to be towed to his residence. At the time of trial the water pump pulley was still bent and had not been replaced, and the cruise control and air conditioner, though not Chrysler products, still did not function properly.
The evidence clearly does not support the trial court's finding that Newman did not tender the vehicle to Coleman for repair. Newman gave Coleman the opportunity to repair from the time he first communicated the defects to Coleman on June 8, 1979. He was unable to drive the vehicle to Baton Rouge due to its many defects. A Coleman mechanic and service manager, subsequently had difficulty starting and transporting it to Hammond for repairs. The record also clearly shows that the air conditioner, cruise control, and water pump pulley were still not repaired at the time of trial. It is pointed out that some of these problems were covered by the Winnebago rather than the Chrysler warranty. Since Community Motors was not authorized to do Winnebago warranty work the repairs were not attempted. Coleman argues that Newman would not allow them to take the vehicle where warranty repairs could be done. As previously noted when the defects were first discovered Newman did not restrict Coleman. Additionally, the buyer of a defective product should not bear the responsibility for the seller's desire to have work done at several different places because of warranty reimbursement.
We find that redhibitory defects existed at the time of sale; Newman gave Coleman the opportunity to repair the defects; and many of the same previously complained of defects persisted to the time of trial. In accordance with the above findings of fact, we reverse the holding of the trial court and rescind the sale.

KNOWLEDGE OF DEFECTS
Appellant alleges that Coleman had constructive or actual knowledge of the existing defects at the time of sale and failed to declare these defects to Newman. Therefore, Coleman should be answerable to Newman in damages including reasonable attorney's fees.
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages." La.C.C. art. 2545. Attorneys' fees and damages are not properly awarded against a seller, who is not a manufacturer, *1160 in a redhibition action unless the seller was in bad faith as defined in La.C.C. art. 2545; Coleman v. Landry & Turner, Inc., 423 So.2d 41 (La.App. 1st Cir.1982). The trial court did not grant rescission because Newman had not given Coleman the opportunity to repair the defects. Since this is not a prerequisite with a bad faith seller, we presume that Coleman was found to be a good faith seller.
On July 20, 1979, before the sale to Newman, Coleman had Chapman Dodge of Baton Rouge perform warranty repair work on the engine (replacing the alternator belt and installing a bolt in the cylinder head). However, this does not necessarily indicate knowledge of the bent pulley which caused the alternator belts to break. Additionally, Newman experienced numerous difficulties with the motor home other than having to replace alternator belts. The minor service work performed by Chapman Dodge was insufficient to convince the trial court that Coleman was aware or should have been aware of the alleged redhibitory defects at the time of the sale to Newman. Findings of fact made by a trial court should not be reversed unless clearly wrong. Arceneaux, 365 So.2d at 1333. We find no manifest error herein, consequently, Coleman is liable to Newman only for the return of the purchase price, reimbursement of reasonable expenses of the sale and preservation of the motor home. La. C.C. art. 2531.
The total purchase price was $17,000. Newman gave a $2,000 down payment and stopped payment on the $15,000 balance. He is entitled to the return of the purchase price actually paid.[1] No evidence was presented to establish expenses of the sale, or expenses incurred by Newman for the preservation of the motor home, i.e., interest, finance charges, license and title certificate, therefore, recovery for these expenses will not be allowed. See Lee v. Blanchard, 264 So.2d 364 (La.App. 1st Cir. 1972). Newman is also entitled to recover interest for Coleman's use of the $2,000 downpayment at the legal rate of ten percent per annum from June 5, 1980. La. C.C. art. 2924; Purvis v. Statewide Trailer Sales, Inc., 339 So.2d at 409.
The seller should not be automatically compensated for the buyer's use of the thing sold, especially where the benefit of the use is outweighed by the inconveniences of the redhibitory defects or the seller's attempts to repair. Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978). The motor home was used by Newman only for the weekend trip to Mobile. Since then the vehicle has remained parked at Newman's home except for the two times it was transported to Community Motors for repairs. Accordingly, we hold that Coleman is not entitled to be compensated for Newman's very limited use and enjoyment of the motor home.

THIRD PARTY DEMAND
Coleman filed a third party demand against Winnebago under La.C.C. art. 2531 seeking reimbursement for all losses sustained should the sale be rescinded, including costs, attorney's fees and interest. Winnebago then filed a third party demand against Chrysler Corporation. The trial court denied rescission and dismissed all third party demands. Newman appealed and Coleman answered this appeal, specifically seeking to preserve its rights against third party defendants should this court reverse the judgment of the trial court and rescind the sale. Winnebago and Chrysler have not answered the appeal. However, Winnebago did file a brief.
La.C.C.P. art. 2133 provides in part:
An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages *1161 against the appellant ... Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee's action.
The third party demands are properly before us and may be considered by this court. We have reversed the trial court judgment and rescinded the sale. We also reverse that portion of the trial court's judgment dismissing Coleman's third party demand against Winnebago. We hold that Coleman is allowed to recover losses sustained as a result of the rescission against its vendor, Winnebago under La.C.C. art. 2531.[2] We find the evidence insufficient for us to make an allocation of responsibility between the dual manufacturers, Winnebago and Chrysler.

DECREE
Judgment is rendered in favor of Newman against Coleman rescinding the sale of the Winnebago motor home and ordering:
1) that Newman deliver the custody of the motor home to Coleman and that Coleman return to Newman that portion of the purchase price actually paid by Newman to Coleman;
2) that Coleman pay to Newman 10 percent per annum interest on the $2,000 downpayment from June 5, 1980 until paid;
3) that Coleman recover against Winnebago all losses sustained as a result of the rescission;
4) that Winnebago pay all costs of these proceedings.
REVERSED AND RENDERED.
NOTES
[1] Coleman was awarded the $15,000 balance. A devolutive appeal was then taken by Newman from the judgment of the trial court. It is unclear whether Newman paid the $15,000 balance subsequent to the trial court judgment. If the $15,000 was paid, he is entitled to its return also.
[2] Recovery of attorney's fees by Coleman is possible under La.C.C. arts. 2531 and 2545. Porche v. Robinson Brothers, Inc., 349 So.2d 975 (La. App. 1st Cir.1977), writ denied, 351 So.2d 171 (La.1977). However, Coleman presented no evidence to enable this court to determine the correct sum to be awarded.