506 So.2d 1236 (1987)
Karl R. GITSCHLAG and Carolyn Glynn Gitschlag
v.
U.S. HOME CORPORATION.
No. 85 CA 1083.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
Rehearing Denied May 11, 1987.
*1237 David J. Krebs & Danny G. Shaw, T.A., New Orleans, for U.S. Home Corp.
Clark Richard, New Orleans, for Karl & Carolyn Gitschlag.
James Ryan, New Orleans, for Crow Ready Mix.
Tom W. Thornhill, Slidell, for Cable Foundations.
Henry Wolbrette, III, New Orleans, for Homecraft Inc.
*1238 James R. Jenkins, Abita Springs, for St. Tammany Parish.
Before LOTTINGER, SHORTESS and CARTER, JJ.
LOTTINGER, Judge.
This is an appeal from a judgment in favor of plaintiff in a redhibitory action, rescinding the sale of a house located in Mandeville, Louisiana.

FACTS
On January 22, 1980, plaintiffs, Karl R. Gitschlag and Carolyn Glynn Gitschlag, purchased a home at 428 Water Oak Lane in Mandeville, Louisiana, from defendant, U.S. Home Corporation (U.S. Home).
Shortly after purchasing the home, the Gitschlags encountered problems with excessive water in their backyard. When the 1980 spring rains began, plaintiffs' backyard flooded. This flooding continued intermittently from the spring of 1980 until mid-1984. As a result of the flooding, plaintiffs were unable to plant landscaping, construct a pool or otherwise effectively utilize their yard.
The Gitschlags also had several problems with their home. Despite numerous repairs by U.S. Home, problems with the slab, windows, doors, air conditioning system, fireplace, sheetrock, wallpaper, cabinets and carpeting persisted. After 1981, U.S. Home refused to send repairmen to resolve plaintiffs' problems.
On January 20, 1981, plaintiffs filed suit against U.S. Home and St. Tammany Parish. In their petition, plaintiffs sought a reduction of the purchase price and $47,000 in damages, alleging that the home had a defective slab and that the property on which the house was situated tended to flood.
Plaintiffs amended their petition naming Homecraft Land Development, Inc. and Homecraft Corporation, alleged joint venturers with U.S. Home, as additional defendants. In their amended petition, plaintiffs increased their claim for damages to $502,000, including a claim for damages for mental anguish. Plaintiffs filed a second amending and supplemental petition, naming as additional defendants Cable Foundations, Inc. and Crow Ready-Mix, Inc., subcontractors of U.S. Home who had constructed the slab of the Gitschlag home. Thereafter, plaintiffs filed a third amending and supplemental petition, requesting a rescission of the sale.
Various third-party demands were filed. All of the claims and third-party demands were satisfactorily resolved prior to or during trial on the merits,[1] with the exception of plaintiff's claim against U.S. Home.
The matter was tried by jury, which returned a verdict in favor of plaintiffs and against U.S. Home Corporation for $227,817.00. The damages were itemized as follows:

The purchase price $78,950.00
Interest on down payment price
while in hands of seller $ 5,360.00
Expenses incurred in connection
with sale $ 1,507.00
Expenses incurred in
preservation of property $ -0-
Interest on mortgage on
property $38,000.00
Loss of favorable interest rate $39,000.00
Mental anguish $50,000.00
Attorney's fees $15,000.00

The trial judge signed the judgment in accordance with the jury's verdict and awarded plaintiff legal interest on all damages from date of judicial demand. Thereafter, U.S. Home filed a motion for judgment notwithstanding the verdict, for new trial and for remittur, all of which were denied by the trial judge on June 14, 1985.
From this adverse judgment, U.S. Home appeals, assigning the following specifications of error:[2]
1. The trial court erred in overruling U.S. Home Corporation's Exception of *1239 No Cause of Action and/or Motion to Strike and allowing plaintiffs to proceed with their suit for rescission of the sale.
2. The jury committed manifest error in awarding plaintiffs $50,000 for mental anguish and distress.
3. The trial court erred in instructing the jury that plaintiffs could recover as an item of damage the increased interest rate which plaintiffs would have to pay upon taking out a new mortgage.
4. In determining damage due for loss of favorable mortgage rate, the jury committed manifest error in refusing to reduce such award to the present value of such future damages.
5. The jury committed manifest error in refusing to allow U.S. Home a credit for plaintiffs' use of the house during their five year residence.
6. The trial court erred in holding that interest should run from the date of judicial demand on all items of damage.

REDHIBITION
Defendant does not contest the jury's factual findings that the property contained redhibitory defects; however, defendant contends that the trial judge erred in allowing plaintiffs to amend their petition to seek rescission of the sale three and one-half years after they instituted suit for reduction in price. Defendant reasons that La.Civ.Code art. 2543 bars the plaintiffs having filed suit for a reduction in price from thereafter seeking a rescission of the sale. Defendant further contends that, although the property contained redhibitory defects, there was no evidence in the record to support the jury's determination that the property was absolutely useless or totally unsuitable for its purpose. Defendant reasons that the Gitschlags are entitled to recover only the amount necessary to convert the unsound structure into a sound one, viz. a reduction in the purchase price.

AMENDMENT TO PETITION
Defendant argues that the trial judge erred in allowing plaintiffs to amend their petition to seek rescission of the sale after they had instituted suit for reduction in price. Defendant reasons that La.Civ. Code art. 2543 bars plaintiffs from so amending their petition.
La.Civ.Code art. 2543 provides, in pertinent part as follows:
The purchaser who has contented himself with demanding a reduction of the price, can not afterwards maintain the redhibitory action.
Defendant reasons that this article bars plaintiffs from amending their petition to seek rescission once they have filed suit requesting only reduction. Defendant, however, has not cited any jurisprudence which supports this position.
We find, however, that defendant has misconstrued and misapplied La.Civ.Code art. 2543.[3] Clearly, under La.Code Civ.P. art. 1151, a plaintiff may amend his petition to alter his demand, with leave of court, after the defendant has answered. In so doing, when the action asserted in the amended petition arises out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the filing of the original pleading. La.Code Civ.P. art. 1153. The result, therefore, is that plaintiffs' original petition sets forth alternative causes of action, rescission of the sale and reduction in the price, which is permissible under La.Code Civ.P. art. 892.
In Giron v. Housing Authority of City of Opelousas, 393 So.2d 1267 (La.1981), the court found:
There is no prohibition against a plaintiff amending his petition with leave of court to alter the substance of his demand *1240 after filing of answer. Article 1151 authorizes such an amendment within the sound discretion of the trial court, evidencing a legislative aim to abolish the former rule which provided that the plaintiff's amendment may not "alter the substance of his demand, by making it different from the one originally brought." See, Code of Practice 1870, art. 419; La.Code of Civ.P. art. 1151, Official Revision Comments. [393 So.2d 1270]
To defeat the plaintiffs' cause of action for rescission because they failed to plead it in their original petition would result in our applying the common law doctrine of election of remedies, which is inconsistent with the modern procedural concepts embodied in our present code of civil procedure, although it may have had some validity under our former procedural scheme requiring technical consistency and assertion of a theory of the case. Giron v. Housing Authority of City of Opelousas, supra.
Clearly, the plaintiffs were entitled to allege rescission in the alternative, and the trial judge did not err in permitting plaintiffs to amend their petition.

RESCISSION VS. REDUCTION IN PRICE
Redhibition is the avoidance of a sale because of a vice or defect in a thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed the buyer would not have purchased it, had he known of the vice. La.Civ.Code art. 2520.
If the defect in the thing sold is such as to merely diminish its value, the finder of fact has the discretion to award merely a reduction of the price. La.Civ.Code arts. 2541 and 2543.
A good faith seller is only bound to repair, remedy or correct the vices or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it. La.Civ.Code art. 2531. However, under La.Civ.Code art. 2545, a bad faith seller "besides the restitution of price and repayment of the expenses, including reasonable attorney's fees, is answerable to the buyer in damages."
In a redhibitory action, the plaintiff need not prove the precise or underlying cause or defect, so long as he shows the thing contained a defect and the defect existed at the time of the sale. Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc., 315 So.2d 660 (La.1975); Coleman Oldsmobile, Inc. v. Newman and Associates, Inc., 477 So.2d 1155 (La.App. 1st Cir.1985).
The existence of a redhibitory defect is a question of fact which cannot be disturbed unless the record as a whole establishes that the finding is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Red Arrow Sales, Inc. v. Dixie Motors, Inc., 442 So.2d 570 (La.App. 1st Cir. 1983).
In the instant case, defendant does not contest the jury's finding that the property contained redhibitory defects. U.S. Home reasons that the defects merely diminish the value of the house but do not render the home absolutely useless.
It is uncontroverted that shortly after purchasing the home, the Gitschlags began having problems with excessive amounts of water in their backyard. In February of 1980, the spring rains began, and plaintiffs' backyard flooded. This flooding of their yard continued intermittently from the spring of 1980 until mid-1984, when culverts were constructed to alleviate the problem. As a result of these flooding problems and although plaintiffs planted a small garden close to the house, the evidence demonstrates that plaintiffs were unable to plant landscaping, construct a swimming pool, or effectively utilize the full potential of their yard.
Additionally, although the water standing in the yard never entered their house, the Gitschlags experienced numerous structural problems with their house. Shortly after moving into the house, Mr. Gitschlag *1241 installed a metal ramp in the garage. When he did so, he noticed that the ramp left indentions in the slab. Once, he dropped a wrench in the garage, and it chipped the slab. Laboratory tests performed on the slab showed that the concrete tested 1486 pounds p.s.i. in the garage and 2035 pounds p.s.i. in the house itself, rather than the 2500 pounds p.s.i. as called for in the specifications. The grout work along the edge of the garage popped out of place and left a two to three inch depression. The grout was also discolored in several places. The Gitschlags also noticed an inordinate amount of dust in the house and in the garage, presumably due to the deficiencies in the slab.
The doors of the house would not stay closed. The striker plates were reset and changed on numerous occasions, but the Gitschlags continued to encounter problems with the doors remaining open. The testimony of the Gitschlags demonstrated that when a vehicle would drive in front of their house or during heavy winds, the doors would blow open. The sliding glass doors were crooked. Further, the windows throughout the house could not be locked. While one of the catches on each window could be secured, the other catch could not be secured so as to lock the windows. The windows in the kitchen would not open. Additionally, for some time the Gitschlags' garage door would open automatically when one of the neighbors opened his garage door electronically.
In December of 1980, the Gitschlags often heard loud knocks on the walls of the house, but could never ascertain the cause of the knocks or alleviate the problem.
Further, the Gitschlags experienced problems with the air conditioning system. The air conditioning ducts in the attic continually came apart. As a result, the air conditioned air was disseminated in the attic instead of in their house. After being "repaired" by the builder, the ducts continued to come apart when the tape they were repaired with no longer held.
While experiencing problems with the ducts in the attic, the Gitschlags noticed that the attic had not been completely insulated. In fact, only one-half of the attic had been insulated and the remaining onehalf had no insulation whatsoever.
Additionally, the Gitschlags had to have the bathtubs relevelled. The bathtubs had been installed in such a manner that when water accumulated on the edge of the bathtub, the water spilled onto the floor rather than falling back into the bathtub.
The fireplace also began moving away from the wall, leaving a large gap between the fireplace and the wall. The Gitschlags experienced the same problem with the garage door frame, the overhang of the roof and the kitchen cabinets pulling away from the walls of the house. They also experienced cracks in the door frames, cracks in the interior sheetrock walls and cracks in the mortar between the bricks. The wallpaper also began to fall from the wall.
The Gitschlags also testified that the kitchen floor had a visible slope, that the house leaned and that the carpet began to stick up in several places.
The plaintiff testified that in 1980 U.S. Home attempted to repair the house, but that after 1981, they refused to send repairmen to alleviate the problems.
Raymond Crow, subcontractor of U.S. Home, testified that in pouring slab for the Gitschlag house, the finisher asked for more water than was required. He opined that too much water, which reduces concrete strength, had been added. Crow also testified that he informed U.S. Home supervisors of the problem.
Henry Robards, plaintiffs' expert in architecture and construction, testified that he inspected the house and observed that plaintiffs' house was built on a posttension slab. He noted that there were numerous cracks in the brick mortar, that the garage door was askew, that the brick had settled away from the slab and that the interior of the house was concaved. Mr. Robards testified that the concrete should have been 2500 pounds p.s.i., but that the concrete tested 1480 pounds p.s.i. in the garage and 2035 pounds p.s.i. in the house. He further testified that, although he was not qualified to give an opinion on posttension design, *1242 he felt that the slab could be repaired for $16,000.00.
Robert Anderson, defendant's expert in design, construction and repair of posttension slabs, testified that the slab is structurally sound, but that there is a four to six inch differential between the high and low elevation of the slab and that it deflects excessively.
Based on this evidence, the jury concluded that the defects complained of by plaintiffs existed at the time of the sale, that they were not apparent and that they were so serious as to warrant rescission of the sale. After thoroughly reviewing the evidence, we cannot say that the jury's findings were manifestly erroneous.

MORTGAGE DIFFERENTIAL
Defendant contends that the trial judge erred in instructing the jury that mortgage differential was a recoverable item of damage. Defendant, alternatively, contends that the jury's award of $39,000.00 for loss of a favorable mortgage rate is not supported by the record.
In the instant case, the record is devoid of any evidence on the issue of mortgage differential. As such the jury's award of $39,000.00 for loss of favorable mortgage rate was an abuse of discretion. Therefore, that portion of the judgment granting $39,000.00 is reversed.

CREDIT FOR USE
Defendant contends that the jury erred in denying U.S. Home a credit for the use of the home during the five-year period the Gitschlags occupied the house.
Credit for use of a redhibitory sale item may be granted by the court upon rescission of the sale. Trigg v. Camper Village, Inc., 424 So.2d 1085 (La.App. 1st Cir.1982), writ denied, 429 So.2d 134 (La. 1983). Often a defect in the thing, although redhibitory, does not render the thing absolutely useless. In such cases, where the purchaser has derived some benefit from the thing before its return, in spite of the defects, it is proper to award a credit for use. Alexander v. Burroughs Corporation, 359 So.2d 607 (La.1978); Hebert v. Claude Y. Woolfolk Corporation, 176 So.2d 814 (La.App. 3rd Cir.1965). In Alexander, 359 So.2d at 610-11, the Supreme Court observed:
A credit for a purchaser's use of a product may be proper in certain instances, even in favor of a bad faith seller.... Compensation for the buyer's use, however, ought not be granted automatically by the courts; even the value of an extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller's attempt to repair.
In the case sub judice, the jury found that the defects in the property rendered it absolutely useless or totally unsuitable for its purpose. The jury also determined that the home had no rental value for which U.S. Home could receive credit. Considering the facts and circumstances of this case, we cannot say that the jury's determination was manifestly erroneous. The record clearly establishes that the home had been a constant inconvenience and worry to the Gitschlags. Further, the record establishes that throughout the five-year period the Gitschlags resided in the house, they did not have the opportunity to fully utilize and enjoy the home.

INTEREST
Defendant contends that the trial court erred in awarding judicial interest from the date of judicial demand. Defendant reasons that debts bear interest from the time they become due, and because plaintiffs' claims were not liquidated until judgment, interest should have been awarded only from the date of judgment.
Under Alexander v. Burroughs Corporation, supra, legal interest is due from the date of the tender or formal notice of the cancellation of the sale, with the exception of the amount awarded for attorney's fees. See also, Land and Marine Services, Inc. v. Diablo Data Systems, Inc. of Louisiana, 471 So.2d 792 (La.App. 5th Cir. 1985); Deblieux v. Arkla Industries, Inc., *1243 390 So.2d 233 (La.App. 3rd Cir.1980), writ denied 396 So.2d 901 (La.1981).
Accordingly, the judgment is amended to reflect that legal interest on the main demand is due from June 25, 1984, the date the petition was amended to request rescission. Interest on the attorney's fees is due from the date of judgment.

MENTAL ANGUISH
Defendant contends that the jury erred in awarding the Gitschlags $50,000.00 damages for mental anguish. Defendant reasons that damages for mental anguish are not allowable in an action for redhibition absent a showing that the thing was purchased for intellectual gratification. Defendant, alternatively, contends that the evidence does not support a $50,000.00 award.
In the case sub judice, a thorough review of the record reveals that plaintiffs seek recovery for inconvenience and aggravation. The damages awarded were an amount to compensate plaintiffs for having to reside in such a defectively constructed house, and the inconvenience and aggravation associated therewith. The multiplicity of vices and defects cumulatively constitute grounds for redhibition as well as recovery for inconvenience and aggravation. Rasmussen v. Cashio Concrete Corporation, 484 So.2d 777 (La.App. 1st Cir.1986); Bourne v. Rein Chrysler-Plymouth, Inc., 463 So.2d 1356 (La.App. 1st Cir.1984), writ denied, 468 So.2d 570 (La.1985). We find that the amount awarded was not an abuse of discretion.

CONCLUSION
For the above reasons, the judgment of the trial court is reversed insofar as it awards plaintiffs $39,000.00 for loss of a favorable mortgage rate. The trial court judgment is amended to award legal interest from June 25, 1984, the date on which plaintiffs first gave notice of their desire to cancel the sale. Interest on the award of attorney's fees shall run from the date of judicial demand. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally against plaintiffs and defendant.
REVERSED IN PART, AMENDED AND, AS AMENDED, AFFIRMED.
CARTER, J., concurs in part and dissents in part and will assign written reasons.
NOTES
[1] No appeal was taken by the other defendants on any of the third-party demands and are not before us on appeal.
[2] Although we will not address each of defendant's assignments of error individually, the opinion adequately addresses all issues raised.
[3] Were we to give La.Civ.Code art. 2543 the interpretation defendant suggests, defendant may be in a worse position. Theoretically, if a jury were constrained to only award a reduction in price and they found, as they did in this case, that the house was absolutely useless and totally unsuitable for its purpose, the jury could grant a $70,000.00 reduction in price on a $78,900.00 sale. The result would be that the plaintiffs would be awarded a reduction of almost the full price and they would retain ownership of the home, a result which would be inequitable and which, we are certain, is not the result defendant desires.